Raymond NELSON, Petitioner/Appellant,

v.

Daniel McCARTHY,
Respondent/Appellee.

No. 79-2605.

United States Court of Appeals,
Ninth Circuit.

Nov. 28, 1980.

Barry J. Portman, San Francisco, Cal., for petitioner/appellant.

Richard G. Tullis, San Francisco, Cal., for respondent/appellee.

Before KILKENNY and POOLE, Circuit Judges, and CALLISTER,* District Judge.

CALLISTER, District Judge:

This appeal arises from the denial of a petition for a writ of habeas corpus filed by the petitioner, Raymond Leroy Nelson. In March of 1974, petitioner was charged by information in Santa Clara County with counts of first degree murder, commission of a felony while armed, and possession of a sawed–off shotgun, in the shooting death of his wife, Sharon Nelson. In May of 1974, a jury found the petitioner guilty of all counts and he was sentenced to a life term in the state penitentiary. The following year his conviction was affirmed by the California Court of Appeals and a subsequent petition for a hearing denied by the California Supreme Court. With his state remedies exhausted, petitioner brought this petition for a writ of habeas corpus in the federal court contending that admissions made to police officers should have been excluded because appellant's waiver of his constitutional rights was neither voluntary nor meaningful due to excessive alcohol consumption. Appellant also maintains that statements made in an interview with a police psychiatrist should have been excluded since it took place after he asserted his right to remain silent. The United States District Court for the Northern District of California, Honorable W.T. Sweigert, District Judge, entered a judgment denying and dismissing the petition. Thereafter, petitioner filed this notice of appeal and the district court granted a certificate of probable cause. The jurisdiction of this Court rests upon § 2253, Title 28, United States Code.

FACTS

On the afternoon of February 7, 1974, at about 4:00 p. m. Raymond Nelson telephoned the Sunnyvale, California, police department and reported that he had shot his wife, Sharon. The record reveals that Nelson had a lengthy history of alcohol addiction and marital instability. Six weeks prior to the shooting, Sharon had moved out and taken up residence with another man. The week prior to Sharon's death, Nelson had been drinking heavily and talked of killing his estranged wife and himself. Apparently in preparation of that course of action, he sawed off a shotgun he had in his possession.

On the day of the shooting, Sharon returned to appellant's home to pick up a sewing machine that she had left behind.

---

* The Honorable Marion J. Callister, United States District Judge for the District of Idaho, sitting by designation.

Nelson tried in vain to persuade her to return to him. When she refused, he took out the sawed–off shotgun from under the couch and fired a round into the living room wall near where she sat. He then shot and killed her.

The police officers arrived at Nelson's house shortly after his call and found him waiting. He was arrested and given a *Miranda* warning. In response to the warning Nelson stated, "I don't need no attorney, I killed her. I called you guys. Can I have a cigarette?" No questions were asked by the police officers at that time and Nelson was taken to the local police station. At the station Detective Gong again advised Nelson of his constitutional rights and Nelson indicated that he would talk with him and did not want an attorney. Detective Gong questioned Nelson for about one and one–half hours, during which time Nelson made several references to the fact that he had "pulled the trigger." The interview promptly ended at about 6:00 p. m., when Nelson became upset with Detective Gong's questioning concerning the moment of the shooting. He said, "I told you I shot her. What more do you want? Don't keep throwing it in my face like this." He thereafter told Detective Gong, "I don't want to talk to you any more. I don't want to say anything about it." During the period of the interview with Gong, samples of blood and urine were taken and analyzed to determine Nelson's blood alcohol level. It was determined that his blood alcohol content ranged between .23% to .30% during this time period.[1]

About an hour after the interview with Detective Gong, Dr. Peschau, a psychiatrist, spoke with Nelson at the request of the police department. Dr. Peschau had been summoned to the police station at about 5:15 p. m. to conduct a diagnostic interview with Nelson to determine if he was mentally impaired by his drinking, but since De-

tective Gong was still questioning him, Dr. Peschau left and returned at about 7:20 p. m. Dr. Peschau informed the petitioner that he was there at the behest of the police to see what his condition was and to see if he could help him. He asked the petitioner if he was aware of his rights, and petitioner responded that he was and understood them. Dr. Peschau asked petitioner, "Do you want to talk to me?" and he replied, "Sure." Dr. Peschau's interview, which was summarized in his report, contained a detailed social history of the petitioner, and particularly his problems with alcohol. He talked about the events leading up to the shooting, but he declined to talk about the incident itself. He admitted that while he had been drinking the week before, he had not become "stumbling drunk." He also admitted that he knew it was morally wrong to shoot another. During the course of the interview, the psychiatrist had the petitioner perform specific mental exercises to determine his mental condition. At trial Dr. Peschau testified that during their interview, petitioner was rational and coherent, and that it was his opinion that the petitioner could premeditate and deliberate.

In the state court proceeding, defense counsel requested a pretrial hearing to determine the admissibility of petitioner's statements made to both Detective Gong and Dr. Peschau. Specifically, petitioner challenged their admissibility for want of adequate *Miranda* warnings and lack of capacity to voluntarily waive those rights. At the hearing, defense counsel called Dr. Closson who had interviewed petitioner several months after the shooting. His testimony was that in his opinion no one could make a truly voluntary waiver of constitutional rights with the blood alcohol level of the petitioner. After hearing all the evidence presented, the court found that with regard to the statements made to Detective Gong:

1. The petitioner's blood alcohol content was analyzed by two different methods, "Method A" and "Method B." Using "Method B", a sample of petitioner's blood showed a blood alcohol content of 0.30% at 5:28 p. m. At 5:45 p. m., a urine sample showed a blood alcohol

content of 0.26%. Using "Method A" a blood sample at 5:45 p. m. was found to contain 0.28% alcohol, and a urine sample was found to contain 0.25% alcohol. At 7:30 p. m., a final urine test found 0.23% of alcohol. (RT 441–2, 456)

"The statement was free and voluntary, and made after proper *Miranda* rights and there was a waiver of it. Now, I will make this ruling without regard to whether Dr. Peschau's statement is admissible or not, even assuming that were [sic] excluded, so I will base it on the other evidence that I heard today and not on what Dr. Peschau said or what is in Dr. Peschau's report." [RT 139–140]

The court went on to hold that the statements made to the doctor were also admissible because there had not been an assertion of petitioner's *Miranda* rights, i. e., petitioner plaintiff refused to talk only about the exact moment of the actual shooting, and then only to Detective Gong, and Dr. Peschau did not violate those rights since he did not delve into the shooting incident.[2]

The United States District Court, in denying the petition for a writ of habeas corpus, found that the record in the trial court was sufficient to create a presumption of correctness under 28 U.S.C. § 2254(d) that petitioner's intoxication did not bar a voluntary waiver of his constitutional rights. As to the statements made to Dr. Peschau, the district court held that since petitioner did not assert his rights, it was not improper for the doctor to interview and elicit statements.

The issues that are before us on this appeal are whether the petitioner's waiver of his constitutional rights was not knowingly and voluntarily given because of intoxication; and whether statements made to Dr. Peschau were used in violation of petitioner's asserted right to remain silent.

In a federal habeas corpus proceeding initiated by a person in custody pursuant to a judgment of a state court, § 2254(d), Title 28 of the United States Code, creates a presumption of correctness of all determinations made on the merits of a factual issue, *Bailleaux v. Cupp*, 535 F.2d 543 (9th Cir. 1976), subject to several listed exceptions. In order to overcome this presumption the burden rests on "the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d); *La-Vallee v. Rose*, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973).

With regard to a factual determination by a trial court of the voluntariness of an alleged confession or admission made by a criminal defendant, the Supreme Court in *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), requires that the court's deducement that the confession was voluntarily given must appear from the record with "unmistakable clarity." *See Gladden v. Unsworth*, 396 F.2d 373 (9th Cir. 1968). The Ninth Circuit in *United States v. Read*, 411 F.2d 582 (9th Cir. 1969) also adds that "[a]t a minimum, the trial court's findings on essential factual issues must ... 'be ascertainable from the record.'" *Id.* at 583. It is with these standards in mind we approach the issues before us.

*Waiver of Constitutional Rights* :

Petitioner challenges the trial court's finding that he had waived his constitutional rights claiming that his actions were not knowing and voluntary because of his state of intoxication. Petitioner's argument is two pronged. First, he argues that the presumption created under 28 U.S.C.

---

**2.** The trial court's holdings were appealed to the Court of Appeals of the State of California, *State v. Nelson*, 1 Crim. No. 13364 (1975). The appeals court rejected appellant's contention that his blood alcohol level was so high as to constitute conclusive evidence that he was too intoxicated to waive his rights knowingly and intelligently. In upholding the trial court the California Court of Appeals pointed out that blood alcohol content alone is not determinative of whether a defendant was capable of making an intelligent waiver. They indicated that the record contains ample evidence that the appellant was coherent, rational and responsive, e. g., appellant's rational and coherent telephone conversation with the police dispatcher immediately after the shooting; his appearance to his neighbor, who reports that he did not appear intoxicated, five minutes after the shooting; his appearance to the arresting officer, who testified that although appellant appeared to have been drinking, his condition would not have supported an arrest for being drunk in public; and finally Dr. Peschau's testimony that appellant's intellectual and discriminatory judgment were intact. (RT Exhibit C)

§ 2254(d) does not arise in this case because the trial court did not make any factual finding regarding the effect petitioner's intoxication had on his ability to understand his rights and to make an intelligent, voluntary waiver. Second, petitioner maintains that the trial court committed error in finding a voluntary waiver because the evidence does not support such a finding.

In support of petitioner's first contention, that the presumption of correctness does not attach, appellant cites *United States v. Brown*, 575 F.2d 746 (9th Cir. 1978) as controlling precedent. There this court remanded the case to the district court for an evidentiary hearing on the question of the voluntariness of a waiver of the defendant's rights. This court found that the record did not show that the trial judge considered the effect of defendant's intoxication on the question of the voluntariness of his waiver of his constitutional rights.

While *Sims v. Georgia, supra,* held that a trial court's finding of voluntariness of a confession must appear from the record with "unmistakable clarity," the Supreme Court also indicated that "the judge need not make formal findings of fact or write an opinion," *Id.* 385 U.S. at 544, 87 S.Ct. at 643, but only that his "conclusion" must appear. In *United States v. Read, supra,* the court pointed out that "it is always advisable for the trial court to make explicit findings reflecting the specific facts upon which the trial court relies in determining the admissibility of a confession or the waiver of rights." 411 F.2d at 583. The *Read* court concluded that "though specific factual findings should have been made, we are satisfied from the record that the trial court's general finding necessarily required a consideration of the factual conflicts and their resolution against defendant's position." *Id.* (citations omitted).

■ In the instant case, a pretrial hearing was held to determine the admissibility of the petitioner's admissions. It is clear from the record that the essential purpose of the hearing was to present evidence on the effect appellant's intoxication had on the voluntariness of his waiver. While it is true that the trial court did not make a factual finding on the effect of petitioner's intoxication on his waiver of his rights, the record clearly reflects the trial court's conclusion that the admissions were voluntary. Under these circumstances, it is more than clear that the trial court considered and rejected petitioner's argument that a voluntary waiver was precluded by his intoxication. Thus, the trial court's determination carries with it the presumption of correctness under 28 U.S.C. § 2254(d). Finally we would point out that petitioner's reliance on *United States v. Brown, supra,* is misplaced. In *Brown* the record indicated that while evidence of intoxication was received by the trial court, no specific finding was made as to the voluntariness of the defendant's confession. Thus, the appellate court's remand of the case for a full evidentiary hearing was proper because the lower court had not fully resolved all the factual conflicts against the accused.

In support of his second contention, that the trial court erred in finding a voluntary waiver, petitioner relies exclusively on the unchallenged fact that his blood alcohol content level was between 0.30% and 0.25% at the time of his alleged waiver, and on the opinion of his expert witness, Dr. Closson, that no person with that high a blood alcohol level is capable of making a voluntary waiver.

■ While it is established that the courts closely scrutinize waivers of constitutional rights, and indulge every reasonable presumption against a waiver, *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); *Gladden v. Unsworth, supra,* it is also evident that the courts have not recognized that the ingestion of alcohol or drugs automatically renders a waiver invalid. The California courts have held that blood alcohol content "standing alone, neither proves or disproves defendant's capacity to understand and rationalize, since there is no established statutory or decisional standard correlating blood alcohol content with cerebral impairment of which this court can take judicial notice. Consequently, the import of and the inference to be drawn from an alcohol blood content ... must rest upon other relevant evidence."

*People v. Stroud,* 273 Cal.App.2d 670, 679–80, 78 Cal.Rptr. 270, 276 (1969). The other relevant evidence looked to by the California courts to determine the effect of a particular blood alcohol level is the "coherence, rationality, and responsiveness of his reactions to his surroundings." *In re Cameron,* 68 Cal.2d 487, 499, 67 Cal.Rptr. 529, 536, 439 P.2d 633, 640 (1968). This Court has followed the same procedure. *Ortiz v. United States,* 318 F.2d 450 (9th Cir. 1963).

■ The trial court held a full pretrial hearing on the question of the validity of petitioner's waiver. Extensive evidence was presented on the effect of petitioner's blood alcohol content on his ability to make a voluntary waiver. The record as a whole establishes that the factual issues relating to intoxication were fully resolved by the trial court, and are thus presumed correct. Appellant presents nothing that was not already considered by the trial court, and from our own review of the record he has failed to carry his burden of presenting "convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d).

*Assertion of Right to Remain Silent:*

■ After an hour and one–half of questioning, petitioner became upset with Detective Gong's persistent approach and refused to talk with him any longer about the shooting. Some time later Dr. Peschau began his interview. Appellant contends that all statements made to Dr. Peschau should be excluded because when he told Detective Gong that he no longer wanted to talk to him, he asserted his right to remain silent. On appeal to the state appellate court, the court rejected appellant's argument and found sufficient evidence in the record to support the trial court's ruling that the appellant did not so assert his right. The appellate court affirmed the trial court's findings that there had been a proper waiver, a refusal to talk to Gong about the exact moment of the shooting, but found there had been no refusal to answer questions posed by someone else.

In its judgment denying petitioner's application for a writ of habeas corpus, the United States District Court, after a review of the record, found that the petitioner never did invoke his constitutional rights, and thus under the circumstances it was not improper for Dr. Peschau to interview the petitioner and elicit statements under the reasoning of *United States v. Rodriguez–Gastelum,* 569 F.2d 482 (9th Cir. 1978) (en banc).

Again we recognize that the resolution of any factual question by the trial court is entitled to the presumption of correctness created by 28 U.S.C. § 2254(d). In light of the full pretrial hearing on the matter, we find nothing in the record to overturn the lower court's findings, nor are we satisfied that petitioner has carried his burden of providing clear and convincing evidence that the lower court erred.

Even if this court presumes that the petitioner invoked his right to silence against Detective Gong, this would not of necessity preclude others from talking with him, nor in some circumstances effect the use of subsequently given statements.

■ In *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court rejected a per se proscription of any further interrogation once the person questioned has indicated a desire to remain silent. The Supreme Court instead indicated "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" Id. at 104, 96 S.Ct. at 326 (footnotes omitted). In a different but closely related context, this Court in *United States v. Rodriguez–Gastelum, supra,* determined that where there has been an equivocal assertion of a constitutional right, the attending officer can ask questions to clarify the defendant's wishes, but then only so long as he does not continue a general interrogation. In that case the defendant was arrested and read his *Miranda* rights and then asked if he wanted to talk. He responded, "Okay, okay, but with an attorney." To clarify, the officer then asked, "Do you want to talk to me without any attorney?" and the suspect answered, "That's fine." The suspect's subsequent statements were found

admissible because there had been a valid waiver.

In this case, it appears that there was some ambiguity in whether petitioner did or did not assert his right to remain silent. Dr. Peschau knew of petitioner's statement to Detective Gong, disclosed that he was there at the request of the police, and verified that petitioner had been informed of his constitutional rights; he then asked if petitioner wanted to talk to him. Appellant's response was, "Sure." During the course of the interview the petitioner consistently cut off the doctor's questioning whenever the incident of the shooting came up. While the doctor did continue the discussion by moving to other subjects, he did not endeavor to delve into those areas that the petitioner had objected to. From our review of the record we are satisfied that the appellant's rights, and in particular his right to cut off questioning, were carefully honored and fully protected. We find no error in admitting the statements made to the psychiatrist.

After a careful review of the proceedings below, we find no reversible error and accordingly we AFFIRM. Petitioner's petition for a writ of habeas corpus should be DENIED.