**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cecil HSU, Defendant–Appellant.**

No. 86–5282.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1988.

Decided June 7, 1988.

As Amended on Denial of
Rehearing Aug. 8, 1988.

Roger J. Rosen and David M. Dudley, Los Angeles, Cal., for defendant-appellant.

Ralph F. Hirschmann, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FARRIS and REINHARDT, Circuit Judges, and McKIBBEN,* District Judge.

FARRIS, Circuit Judge:

Cecil Hsu appeals his conviction, following a jury trial, for conspiracy to possess and distribute cocaine and possession with intent to distribute cocaine. Hsu contends that the district court erred in denying his motion to suppress incriminating statements made to DEA Agent Hill and in allowing the admission of the statements at trial. Hsu contends that federal agents violated his fifth amendment rights when Agent Hill questioned him about his involvement in the alleged drug conspiracy within thirty minutes after Hsu had invoked his right to remain silent, thereby terminating a first interrogation by DEA Agent Valentine on the same subject.

FACTS

Cecil Hsu and codefendant Jerry Cantrell were indicted for conspiracy to possess and to distribute cocaine and for possession with intent to distribute cocaine. Hsu filed a motion to suppress a post-arrest confession made to DEA Agent Hill, alleging that it was obtained in violation of his *Miranda* rights.[1]

The parties submitted the following evidence on Hsu's suppression motion. In April 1986, DEA Agent Schmidt, acting undercover, began negotiating with Hsu's codefendant, Cantrell, to purchase cocaine. On April 30, 1986, Cantrell and Schmidt arranged to meet at 3:00 p.m. in a shopping center parking lot in order for Cantrell to sell Schmidt two kilograms of cocaine. Earlier that afternoon, DEA Agent Kuehl began watching Cantrell's residence. Kuehl observed Hsu drive up to Cantrell's residence, speak with Cantrell, and then open the trunk of his car. Cantrell removed a black briefcase from Hsu's trunk and carried it into his house. Hsu followed Cantrell through a gate but did not enter the house. Approximately three minutes later, Hsu and Cantrell emerged; Cantrell was carrying a different briefcase.

Cantrell and Hsu drove in separate cars to the shopping center, located three to six minutes from Cantrell's house, and parked about 100 feet apart. Cantrell immediately began conversing with Agent Schmidt while Hsu watched them, first from his car and then from the sidewalk in front of the Sears department store. As Cantrell opened the briefcase and showed the cocaine to Schmidt, agents arrested Cantrell.

---

* Honorable Howard D. McKibben, United States District Judge for the District of Nevada, sitting by designation.

1. Hsu also moved to suppress (1) statements made to DEA Agents Valentine and Kuehl, asserting that they were the products of an unlawful arrest and obtained in violation of his *Mi-* *randa* rights, and (2) evidence seized from his automobile during a vehicle search allegedly conducted without probable cause. Though the district court denied the entire motion, Hsu appeals only the admission of his confession to Agent Hill.

Observing Cantrell's arrest, Hsu entered the Sears store and was arrested inside by Agents Kuehl and Valentine. The agents brought Hsu outside the store. There, Agent Valentine read him his *Miranda* rights from a preprinted card. When asked if he understood his rights and would answer questions, Hsu responded affirmatively. After answering a few questions, Hsu asked if he could remain silent; Agent Valentine said that he could and stopped the interview.

DEA Agent LaMoreaux then placed Hsu in her car and drove him to the Cantrell house, where agents were conducting a search. After participating in the search, DEA Agent Hill emerged from the Cantrell house and approached the car, where Hsu and LaMoreaux were waiting. Hill did not know that Hsu had previously invoked his right to silence. Hill advised Hsu of his *Miranda* rights, and asked him if he understood his rights and would answer questions. After Hsu answered affirmatively, Hill interrogated him.[2] In response to Hill's questions, Hsu confessed that (1) he knew that the black briefcase which he brought to Cantrell contained cocaine; (2) he had gone to the shopping center to assist Cantrell in case of trouble; (3) he had previously delivered other briefcases to Cantrell; and (4) he knew that Cantrell was dealing cocaine.

The district court denied Hsu's suppression motion, including his request to suppress the admission of the statements made to Agent Hill. The court found that Hill was unaware of Hsu's previous invocation of the right to remain silent and had properly Mirandized Hsu, and that Hsu voluntarily waived his right to silence.

At Hsu's jury trial, the incriminating statements were admitted into evidence through the testimony of Agent Hill. Hsu was convicted on both indictment counts and sentenced to four years imprisonment followed by five years probation. Hsu filed a timely appeal.

## DISCUSSION

The sole issue is whether the interrogation by Agent Hill violated Hsu's fifth amendment right not to incriminate himself. Hsu argues that the short period of time that elapsed between the first and second interrogation, and the fact that Agent Hill questioned him about the same subject matter with respect to which Hsu had asserted his right to remain silent, caused the second interrogation to run afoul of the fifth amendment. The government, in support of its argument that Hsu's right to cut off questioning was "scrupulously honored" within the meaning of *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), emphasizes the fresh set of *Miranda* warnings that Agent Hill administered to Hsu before the second interrogation, *see Miranda v. Arizona*, 384 U.S. 436, 467–71, 86 S.Ct. 1602, 1624–26, 16 L.Ed.2d 694 (1966), along with the respect that agents displayed for Hsu's rights in making no attempt to pressure him to answer questions.

In *Michigan v. Mosley*, the Supreme Court rejected the proposition that its earlier decision in *Miranda* barred law enforcement officials from ever questioning a suspect after the suspect had invoked his right to remain silent. Rather than adopt such a fixed, per se rule, the *Mosley* Court laid down a case-by-case approach that takes the concerns of the *Miranda* Court into account. In adopting the "scrupulously honored" rule, the *Mosley* Court recognized that police questioning is especially suspect when it follows a suspect's invocation of his *Miranda* rights, and consequently, courts must be satisfied that any statements made in response to such questioning were the products of the suspect's free will. On the other hand, the *Mosley* Court recognized that *Miranda* allows for voluntary, knowing, and intelligent waivers of the right to silence, *see Miranda*, 384 U.S. at 475–76, 86 S.Ct. at 1628, and reasoned that a rule forbidding questioning after an assertion of *Miranda* rights even if the suspect voluntarily retracts that first as-

---

**2.** At the suppression hearing, Hsu denied that Agent Hill had advised him of his *Miranda* rights. The district court found that Hsu was read his rights outside of Sears by Agent Valentine and readvised of his rights by Agent Hill outside the Cantrell residence.

sertion would be both irrational and contrary to *Miranda*'s concern for "legitimate police investigative activity." *Mosley*, 423 U.S. at 102, 96 S.Ct. at 326.

The question before us is whether the police "scrupulously honored" Hsu's right to remain silent. Hsu does not contend that DEA agents harassed him, or even that they pressured him in any way to revoke his assertion of the right to remain silent. *Cf. Oregon v. Elstad*, 470 U.S. 298, 312, 105 S.Ct. 1285, 1294, 84 L.Ed.2d 222 (1985) ("There is a vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a 'guilty secret' freely given ...."). Rather, his claim is that the inherent coerciveness of an interrogation that takes place a short period of time after the assertion of *Miranda* rights and on the same subject as to which *Miranda* was invoked is so great as to warrant a judicial injunction against any questioning in such a circumstance, even if it follows a fresh set of warnings and a voluntary, knowing, and intelligent waiver.

Our reading of *Mosley* is not so wooden. Far from laying down inflexible constraints on police questioning and individual choice, *Mosley* envisioned an inquiry into all of the relevant facts to determine whether the suspect's rights have been respected. Among the factors to which the Court looked in that case were the amount of time that elapsed between interrogations, the provision of fresh warnings, the scope of the second interrogation, and the zealousness of officers in pursuing questioning after the suspect has asserted the right to silence. *See Mosley*, 423 U.S. at 104–06, 96 S.Ct. at 326–27. At no time, however, did the Court suggest that these factors were exhaustive, nor did it imply that a finding as to one of the enumerated factors—such as, for example, a finding that only a short period of time had elapsed—would forestall the more general inquiry into whether, in view of all relevant circumstances, the police "scrupulously honored" the right to cut off questioning.

Our post-*Mosley* decisions have adhered to this flexible approach that takes account of all relevant circumstances. For example, we have noted on several occasions that an identity of subject matter in the first and second interrogations is not sufficient, in and of itself, to render the second interrogation unconstitutional. *Grooms v. Keeney*, 826 F.2d 883, 886 (9th Cir.1987); *United States v. Heldt*, 745 F.2d 1275, 1278 n. 5 (9th Cir.1984) (discussing *United States v. Boyce*, 594 F.2d 1246, 1278 (9th Cir.1979)). As Judge Tang stated in *Grooms:* "[T]he fact that a subsequent interrogation pertains to the same crime is not important.... [T]he fresh warnings to Grooms are sufficient to create a valid waiver despite the fact that he was questioned about the same crimes he had earlier declined to discuss." 826 F.2d at 886.

Similarly, we have never suggested that any specific length of time is necessary to a finding that the right to cut off questioning was scrupulously honored. This approach follows from *Mosley*, which noted "the passage of a significant period of time," 423 U.S. at 106, 96 S.Ct. at 327, but did not suggest any talismanic durational minimum. Moreover, neither *Mosley* nor our more recent cases have suggested that the period of time between interrogations is the most important factor to be considered. *Mosley* must be read as standing for the proposition that the passage of time is relevant to the "scrupulously honored" inquiry, but not for that factor's importance in any given factual setting. *See United States v. Davis*, 527 F.2d 1110, 1111 (9th Cir.1975), *cert. denied*, 425 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 196 (1976).

Our recent opinions establish that neither the amount of elapsed time nor the identity of subject matter are of primary importance. Rather than these factors, we have focused on the validity of the second waiver, and in so doing, have been most concerned about "the provision of a fresh set of warnings." *Heldt*, 745 F.2d at 1278 n. 5; *see also Grooms*, 826 F.2d at 886.

In addition, our cases since *Mosley* have always taken note of the actual coercion exerted by police upon a suspect in order to

extract information. Although *Miranda* warned of the coerciveness inherent in all custodial interrogations, nothing in that opinion or in the subsequent pronouncements of the Court precludes courts from considering the egregiousness of police conduct in specific cases. *See, e.g., Arizona v. Mauro,* —— U.S. ——, 107 S.Ct. 1931, 1935–37, 95 L.Ed.2d 458 (1987); *Rhode Island v. Innis,* 446 U.S. 291, 302–03, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). This, in fact, is what the *Mosley* rule implicitly asks courts to do. Hence, in *United States v. Olof,* 527 F.2d 752 (9th Cir.1975), where we held that a suspect's right to cut off questioning was not scrupulously honored, we were influenced by the psychological pressure brought to bear when the interrogating agent told the suspect "that prison was a 'dark place,' where they 'pumped air' to the prisoners." *Id.* at 753. In other cases, by contrast, we have been persuaded that "objective, undistorted presentation[s]" by the police of the evidence against a suspect are less constitutionally suspect than is continuous questioning because the risk of coercion is lessened when information is not directly elicited. *See United States v. Pheaster,* 544 F.2d 353, 368 (9th Cir.1976), *cert. denied sub nom. Inciso v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *see id.* at 366 (stressing the "key distinction between questioning the suspect and presenting the evidence available against him"). This is not to say that detached recitations of previously gathered evidence are always free of coercion. It is to say, however, that they tend to be less coercive, and that courts, in conducting factual inquiries into whether the police acted with due respect for suspects' rights, may properly take account of the actual tactics employed in eliciting information—not just circumstantial factors like the passage of time.

With these considerations in mind, we turn to the case at hand. Hsu has argued that the amount of elapsed time—which the parties agree was at most thirty minutes—and the identity of subject matter in the two interrogations bring the second questioning session into conflict with *Mosley.* We agree that these factors are relevant to our *Mosley* inquiry. Insofar as Hsu urges upon us a per se rule that would preclude our consideration of other relevant factors —for example, a bright line rule barring any questioning that takes place within an hour of an invocation of *Miranda* rights— we reject this advice. As our analysis of the cases has shown, *Mosley* requires us to consider all relevant factors.[3]

The most important factor—or, as Judge Fletcher stated in *Heldt,* "[t]he crucial factor," 745 F.2d at 1278 n. 5—is the provision of a fresh set of *Miranda* rights. Hsu's brief does not make clear whether he is challenging the district court's finding that he was readvised of his rights by Agent Hill and that he validly waived those rights. In any event, our review of the record convinces us that these findings were not clearly erroneous. The court had to make a credibility determination; in the absence of any independent evidence suggesting that fresh warnings were not given, it was not erroneous for the court to accept the version of events to which Agents Hill and LaMoreaux testified. *See United States v. Alderdyce,* 787 F.2d 1365, 1368 (9th Cir.1986); *United States v. Doe,* 764 F.2d 695, 697 (9th Cir.1985).

In addition to the fresh warnings and valid waiver, the deferential conduct of the DEA agents involved in this investigation militates toward a finding that Hsu's right to cut off questioning was scrupulously honored. Unlike officials in such cases as *United States v. Lopez–Diaz,* 630 F.2d 661, 664 (9th Cir.1980) (holding that police did

---

**3.** This requirement that we consider the totality of circumstances highlights the difference between cases such as this where the defendant has invoked the right to *silence* and cases in which the right to *counsel* is asserted. The Supreme Court has adopted a bright line rule in the latter context, forbidding further interrogation in the absence of counsel unless the defendant initiates communication. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In extending the *Edwards* rule, the court recently reaffirmed the silence/counsel dichotomy and made clear that *Mosley* still stands. *Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 1006, 98 L.Ed.2d 972 (1988).

not scrupulously honor the suspect's right to cut off questioning when, after the suspect asserted a right to silence on a particular topic, the agent continued the interrogation on different subjects and then returned to the proscribed subject without any recess or fresh warnings), the agents here cut off the first round of questioning as soon as Hsu expressed a desire not to speak. This conduct was the antithesis of coercion or intimidation. As the government notes in its brief:

> When defendant asked, at the Sears store, if he must continue to answer questions, the agents simply desisted. They did not even exercise their right to determine if defendant's inquiry constituted an assertion of his right to remain silent. [citations omitted.]

When questioning did resume, the context and atmosphere were different. For one thing, the physical setting had changed. While we do not suggest that investigators may satisfy the *Mosley* rule simply by moving a suspect, under the facts of this case the change of scenery served as an intervening event to help alleviate any pressure that Hsu may have felt to waive his rights back at the Sears parking lot. The fresh warnings, of course, furthered this same end in a powerful way, as did the agents' restraint after Hsu asserted his *Miranda* rights. The record demonstrated that Agent Hill exerted no pressure upon Hsu whatsoever. He merely read Hsu his rights a second time, and Hsu responded with a valid waiver.

Under such circumstances, we are unable to find that the *Mosley* requirements were contravened.[4] Although the passage of time in this case might ordinarily incline us toward a conclusion that right to cut off questioning was not respected, the clear evidence of scrupulous conduct by the DEA agents and free informed choice by Hsu militates against such a judgment.

AFFIRMED.

REINHARDT, Circuit Judge, dissents.

REINHARDT, Circuit Judge, dissenting:

An interrogation of a criminal defendant must cease once the defendant has invoked his right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 473–77, 86 S.Ct. 1602, 1627–29, 16 L.Ed.2d 694 (1976). As the majority acknowledges, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (footnote omitted). Because Cecil Hsu's right to remain silent was not "scrupulously honored", I must respectfully dissent.

Hsu was arrested in a department store and a DEA agent read him his rights outside the store. After answering a few questions, Hsu invoked his right to remain silent. At that point, the questioning temporarily ceased. Hsu was then driven to a residence a few blocks away. While he was kept waiting in the car, a second DEA agent readvised him of his *Miranda* rights and asked him a series of questions. Hsu seeks to suppress the answers he gave during this second interrogation.

The general rule is that after a defendant has invoked his right to remain silent, he cannot be questioned, *Michigan v. Mosley*, 423 U.S. at 104–05, 96 S.Ct. at 326–27; *United States v. Heldt*, 745 F.2d 1275, 1276–77 (9th Cir.1984); *United States v. Lopez–Diaz*, 630 F.2d 661, 664 (9th Cir. 1980), unless at some later time he indicates a desire to provide information to the authorities. *United States v. Boyce*, 594 F.2d at 1250; *United States v. Wilson*, 571

---

**4.** The reader may independently determine whether the dissent is correct in its assertion that we have "ignored" the requirement that circumstances have changed between the time of the original interrogation and the second session. Although the provision of a fresh set of warnings is central to our analysis, we have also taken note of a variety of other factors that speak to changes in circumstances, among them, the restrained conduct of the officers, the change of scenery, Hsu's complete willingness to retract his first (somewhat equivocal) assertion of the right not to speak, and the absence of subterfuge.

F.2d 455, 456–57 (9th Cir.1978).[1] Courts have, however, permitted renewed questioning where circumstances have changed significantly since the time of the original questioning *and* a second *Miranda* warning is given. Here the majority simply ignores the first requirement and finds the fact that a second *Miranda* warning was given sufficient.

In *Mosley*, the second interrogation was conducted two hours after the first, in a different location, by a different officer, regarding a different crime. *Mosley*, 423 U.S. at 104–05, 96 S.Ct. at 326–27. In *Grooms v. Keeney*, 826 F.2d 883 (9th Cir. 1987), the second interrogation was four hours after the first, by officers from a different jurisdiction, regarding primarily a different crime. *Id.* at 885–86. In such changed circumstances, where the second interrogator has given a new *Miranda* warning, the courts have concluded that the defendants' right to cut off questioning was "scrupulously honored."

The present case is substantially different. Even by the government's account, as little as fifteen to thirty minutes elapsed between the end of the first interrogation and the beginning of the second. Both interrogations involved the same crime exclusively, and the same investigatory authority.[2] Nevertheless, under the majority's interpretation and application of the *Mosley* rule, it was enough that the second agent read Hsu a new *Miranda* warning.

I cannot agree that, when a defendant has announced following a *Miranda* warning that he wishes to remain silent, his interrogators can regain the right to question him fifteen minutes or thirty minutes later simply by re-reading the identical *Miranda* warnings they read him only min-

utes earlier. The majority offers no rationale for its rather odd conclusion that the mere repetition of a warning previously given constitutes the "scrupulously honor[ing]" of the defendant's right to cut off questioning and justifies the resumption of that questioning. Having carefully read and re-read the majority opinion, I must admit that I fail totally to see the connection.[3] In my view the majority opinion conflicts with the directive of *Michigan v. Mosley*, and removes all force from the rule it purports to apply. It is readily apparent that Hsu's right to remain silent was not "scrupulously honored." Accordingly, I dissent.

---

1. Obviously this rule does not apply where the defendant has not invoked his right to silence, *United States v. Boyce*, 594 F.2d 1246, 1250 (9th Cir.1979) or where the right to silence is invoked narrowly, only as to a particular aspect of the crime and as to a particular investigator, *Nelson v. McCarthy*, 637 F.2d 1291, 1296 (9th Cir.1980).

2. Though the suppression hearing record was silent on the issue, the evidence at trial showed that the second interrogator knew of Hsu's invocation of his right to silence. This fact reinforc-

es the conclusion that Hsu's right to remain silent was not "scrupulously honored." In any event, knowledge on the part of the second interrogator is presumed. *See United States v. Covington*, 783 F.2d 1052, 1055 (9th Cir.1985).

3. Actually, there would seem to be no legitimate purpose to a second reading of *Miranda* rights so soon after the first, except in cases in which the defendant had indicated a change of position or some other justification existed for the resumption of questioning.