988 F.2d 125
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wendell PICHAY, Defendant-Appellant.
 No. 91-10571.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1992.
Decided Feb. 26, 1993.
 
 1
 Appeal from the United States District Court for the District of Hawaii, No. CR 91-00262-DAE; David A. Ezra, District Judge, Presiding.
 
 D.Hawaii
 
 2
 AFFIRMED.
 
 
 3
 Before WILLIAM A. NORRIS, BEEZER and KLEINFELD, Circuit Judges
 
 
 4
 MEMORANDUM*
 
 
 5
 Appellant Wendell Pichay appeals his convictions for murder, robbery, and conspiracy to commit robbery. He raises eight separate challenges to these convictions. We affirm.
 
 
 6
 * Appellant argues that in light of the intense publicity surrounding his arrest for the murder of Lance Corporal Borchers, the district court abused its discretion when it denied his motions for change of venue. He argues that he was entitled to a change of venue on the basis of both presumed prejudice and actual prejudice. We disagree on both counts.
 
 
 7
 Although appellant was the subject of numerous newspaper articles and television news reports in Honolulu concerning the Borchers murder, the vast majority of these news accounts were largely factual in nature, and were either published or aired more than a year prior to the commencement of his trial. Thus, as noted by the district court, the publicity in this case did not constitute the "barrage of inflammatory publicity" necessary to warrant a presumption of prejudice. See United States v. Dischner, 974 F.2d 1502, 1523-24 (9th Cir.1992); Harris v. Pulley, 885 F.2d 1354, 1362-63 (9th Cir.1988), cert. denied, 493 U.S. 1051 (1990).
 
 
 8
 Furthermore, appellant has failed to show actual prejudice. Actual prejudice exists when a juror has such a fixed opinion that she cannot judge the defendant's guilt impartially. Patton v. Yount, 467 U.S. 1025, 1035 (1984). Qualified jurors need not be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800 (1975). See also Dischner, 974 F.2d at 1524-25.. " 'It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' " Id. at 800 (quoting Irwin v. Dowd, 366 U.S. 717, 723 (1961)).
 
 
 9
 In this case, voir dire was conducted in a manner that ensured that an impartial jury would be seated. Jurors who admitted on the jury questionnaire that they could not be fair and impartial were summarily excused by stipulation of the parties. Those jurors who acknowledged exposure to publicity but indicated they could be impartial were subject to a probing examination by the district court. Furthermore, the court sustained every challenge for cause made by defense counsel to jurors who they felt had been tainted by pretrial publicity. Only those jurors not challenged by the defense were seated. Accordingly, we hold that the district court did not abuse its discretion in denying defendant's motions for change of venue.
 
 II
 
 10
 Appellant argues that the government's exercise of its peremptory challenges violated his right to equal protection. He claims that the government used its peremptory challenges to strike "brown skinned local people" solely on account of their racial or ethnic extraction. This claim fails as a threshold matter because the district court determined, after holding a Batson hearing, that appellant had failed to make out a prima facie case of race discrimination. The court found not "one shred of evidence to even suggest a racial motivation" in the government's exercise of peremptory challenges. On this record, the court's finding was not clearly erroneous. See Hernandez v. New York, 111 S.Ct. 1859, 1869 (1991).[1]
 
 III
 
 11
 Appellant argues that the district court should have suppressed the statements he made to FBI and NIS agents because they were obtained after he had already invoked his right to silence under Miranda v. Arizona, 384 U.S. 436 (1966). Once a defendant has invoked the right to silence, further questioning is permissible only if law enforcement officials "scrupulously honor" the defendant's assertion of the right to remain silent. Michigan v. Mosley, 423 U.S. 96, 104 (1975).
 
 
 12
 Although Pichay had waived his Miranda rights initially and had spoken freely to the first police officer for about an hour, he later invoked his right to cut off questioning on two different occasions in which he was being questioned about various robberies of restaurants. Both times he stated that he did not want to speak about "any robberies," and both times his request resulted in the immediate termination of the interview.
 
 
 13
 The next day, however, in the late afternoon of May 28, 1990, the defendant was approached by two NIS agents and an FBI agent. After issuing a new set of Miranda warnings, going over each right with Pichay, and obtaining a written waiver, the federal agents questioned Pichay about the robbery and murder of Borchers for several hours. Statements obtained during this interview were admitted at Pichay's trial. Appellant argues that by initiating this second interview, the agents failed to "scrupulously honor" his right to remain silent, and therefore that his statements should not have been admitted at trial. We disagree.
 
 
 14
 In United States v. Hsu, 852 F.2d 407 (9th Cir.1988), we held that a defendant's invocation of his right to silence was scrupulously honored even though he was questioned about the same crime just 30 minutes after he had cut off the questioning. We determined that Hsu's Fifth Amendment rights were protected because the second police officer had administered a fresh set of Miranda warnings and had acted in a deferential and non-coercive manner. Id. at 411-12.
 
 
 15
 In this case, the federal agents did not approach Pichay until a full day after he cut off questioning; they issued a fresh recognized this sort of pouch from earlier military maneuvers. This clearly passes the "reasonable precision" requirement.
 
 
 16
 Second, appellant argues that the court should have suppressed the seven .45 caliber shell casings that were found at his residence one year later, on the ground that this evidence was the fruit of an unlawful successive search warrant. See Filippelli v. United States, 6 F.2d 121, 125 (9th Cir.1925). We disagree.
 
 
 17
 In United States v. Whitworth, 856 F.2d 1268 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989), we held that Filippelli did not establish a per se rule against consecutive searches, but rather only a presumption, in the absence of some showing to the contrary, that the officers will perform a first search properly and will therefore have no legitimate reason to execute a second one. Id. at 1282. Here, the district court found that there was evidence to suggest that the first search was less than thorough because it had been conducted without a metal detector. Moreover, the court found that there was "no evidence that [the agents] purposely neglected to use a metal detector in the hope of returning for a second bite at the apple." Because we find nothing in the record to contradict the district court's findings, we hold that the second search did not violate defendant's Fourth Amendment rights.[2]
 
 V
 
 18
 Appellant argues that, under the Jencks Act, it was error for the court to grant the government's motion for a protective order preventing the release of 33 reports prepared by federal agents memorializing interviews with certain witnesses the government planned to call at trial. After reviewing the documents in camera, the court noted that these documents were not covered under the Jencks Act because they were neither (1) statements written, signed or adopted by witnesses; (2) testimony given to a grand jury; nor (3) substantially verbatim, contemporaneously recorded recitals of the witnesses' oral testimony to an agent.
 
 
 19
 Whether material falls within the Jencks Act is reviewed for an abuse of discretion. United States v. Polizzi, 801 F.2d 1543, 1552 (9th Cir.1986). The district court found that "the vast bulk of the language [in the reports] appears to represent the interviewing agents' selection, interpretation, and summarization of the witness' testimony." The court found "it ... apparent from some of the vocabulary used that much of the language originated with the agent taking notes, not with the speaker." As a consequence, the court was "unable to separate those parts of any given report constituting an agent's summary or interpretation from the parts that may represent the witness' own words."
 
 
 20
 We have reviewed the agents' reports ourselves and find that they contain an " 'unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations.' " See United States v. Simtob, 901 F.2d 799, 809 (9th Cir.1990) (citation omitted). The district court did not abuse its discretion in granting the protective order.
 
 VI
 
 21
 Appellant argues that the court should have granted his motions for mistrial because (1) the prosecution introduced evidence about unrelated robberies during its case-in-chief and (2) the prosecution made prejudicial comments about these robberies during closing argument. We review the denial of a mistrial for an abuse of discretion, see United States v. Segal, 852 F.2d 1152, 1155 (9th Cir.1988), and find that the court did not abuse its discretion in denying the motions for mistrial.
 
 
 22
 Appellant based his motions for mistrial on the following evidence introduced during the prosecution's case-in-chief: (1) A police officer on direct examination made reference to a "rash series of robberies" occurring in the area in which Pichay had been parked on the day he was picked up; and (2) Witness Herman Kua testified that he and Pichay had gone out "for hit one place" and that police officers had said at the time Kua and Pichay were arrested that "You the punks that robbing all these places."
 
 
 23
 The district court found that the police officer's testimony simply gave the context for why the officers had occasion to stop Pichay when they did. And the district court found that Kua's statements were admissible in light of testimony brought out by the defense during cross-examination that Kua had exclaimed "he made me do it." Moreover, the court properly gave a limiting instruction. Accordingly, we hold that it was not an abuse of discretion to deny these motions for mistrial.[3]
 
 
 24
 In addition, appellant argues that the prosecutor's comment during rebuttal that Pichay and Kua "were out contemplating a robbery that night," along with others to that effect, were so prejudicial that it was an abuse of discretion not to grant a mistrial. We disagree. These comments were made in response to Pichay's closing argument, and any prejudicial impact they might have had was minimized by the limiting instruction given at the close of arguments. Thus, the district court did not abuse its discretion in denying the mistrial.
 
 VII
 
 25
 Appellant argues that the presence of the victim's mother in court everyday along with several uniformed Marines exerted a prejudicial influence upon the jury, and that his motion for a mistrial should have been granted. Because Pichay does not allege actual prejudice, the question is whether the presence of uniformed Marines was "so inherently prejudicial as to pose an unacceptable threat" to the right to a fair trial. Holbrook v. Flynn, 475 U.S. 560, 572 (1986). A courtroom practice or arrangement is inherently prejudicial if "an unacceptable risk is presented of impermissible factors coming into play." Estelle v. Williams, 425 U.S. 501, 505 (1976).
 
 
 26
 In this case, the district court made lengthy findings on the record documenting that nothing had occurred during the trial that detracted from the "solemn and reverent and judicial atmosphere" that was maintained in the courtroom. In light of the court's exhaustive findings, and in the absence of any evidence to the contrary, we hold that the court did not abuse its discretion in denying the mistrial.
 
 VIII
 
 27
 Finally, appellant claims that, during closing argument, the prosecution improperly commented on the appellant's failure to testify. The prosecutor made the following statement to the jury:
 
 
 28
 Was Herman Kua contradicted by an exhibit or by any other witness, think about it, quite the contrary. As the evidence came in day after day after day in this trial, both the testimony and the exhibits, one point after another, supported, corroborated, Herman Kua and what he told you occurred.
 
 
 29
 Appellant argues that this statement was not only improper, but sufficiently prejudicial to warrant reversal. We disagree.
 
 
 30
 "[C]omment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987). Prosecutorial comment on the defendant's failure to testify mandates reversal "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal." United States v. Kennedy, 714 F.2d 968, 976 (9th Cir.1983), cert. denied, 465 U.S. 1034 (1984). But we "will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions." Lincoln, 807 F.2d at 809.
 
 
 31
 Even if we assume, arguendo, that the jury would "naturally and necessarily" have taken the prosecutor's statement as a comment on Pichay's failure to testify, we do not think it would have affected the verdict in this case. First of all, appellant's own counsel first made reference to the fact that Pichay had not testified in his own closing argument. Second, the prosecution's reference was brief, oblique, and made without any particular emphasis. And finally, in instructing the jury, the court cautioned the jurors that they were not to draw any inferences from the defendant's failure to testify. Accordingly, we hold that it was not an abuse of discretion for the court to deny the defendant's motion for mistrial.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellant also argues that the government violated his equal protection rights by systematically striking young persons from the jury solely on account of their age. Because this raises a question of first impression in this circuit, we reject appellant's claim in a separate published opinion filed contemporaneously with this memorandum disposition
 
 
 [2]
 In the alternative, appellant contends that the affidavit supporting the issuance of the second warrant--in which Agent Matteson declared that a metal detector was "not available/utilized" during the first search--was constitutionally defective because it contained an obvious lie
 However, the district court found that Agent Matteson had not misrepresented the truth either intentionally or recklessly, and we see no basis for disturbing the district court's finding as clearly erroneous.
 
 
 [3]
 Appellant also argues that evidence brought out during trial concerning his possession of an AK-47 rifle on the night of his arrest was improper. This argument has no merit. The government's theory was that appellant lent the stolen .45 pistol to his cousin Kua on the night of his arrest because appellant had his own rifle and did not need another weapon. This evidence was relevant to establishing a material fact, and it was within the court's discretion to admit it