**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 19 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

PRESTON HENRY TOLTH,

Defendant - Appellee.

No. 24-2900

D.C. No.
3:23-cr-08043-DLR-1

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted March 24, 2025
Phoenix, Arizona

Before: BERZON and BENNETT, Circuit Judges, and LEFKOW, District Judge.[**]
Dissent by Judge BENNETT.

The Government appeals the district court's order suppressing statements

made by Defendant Preston Henry Tolth after he invoked his Fifth Amendment

right to silence. We review the grant of a motion to suppress de novo and the

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Joan H. Lefkow, United States District Judge for the Northern District of Illinois, sitting by designation.

district court's underlying factual findings for clear error. *United States v. Malik*, 963 F.3d 1014, 1015 (9th Cir. 2020) (per curiam).

Statements obtained by law enforcement after a suspect in custody invokes his right to remain silent are admissible only if law enforcement officers "scrupulously honored" the suspect's "right to cut off questioning." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (quoting *Miranda v. Arizona*, 384 U.S. 436, 474, 479 (1966)). In determining whether law enforcement scrupulously honored a suspect's right to silence under *Mosley*, we consider "the amount of time that elapsed between interrogations, the provision of fresh [*Miranda*] warnings, the scope of the second interrogation, and the zealousness of officers in pursuing questioning after the suspect has asserted the right to silence." *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988). These factors are not exhaustive, and no one factor is dispositive. *Id.* The ultimate inquiry is whether, in light of all relevant facts, the "suspect's rights have been respected." *Id.*

The record demonstrates that law enforcement did not scrupulously honor Tolth's right to silence. Six days after Tolth unambiguously invoked his right to silence in his first interview with law enforcement, a law enforcement officer initiated a second interview with Tolth. That interview, as well as a third interrogation, concerned the same crime as did the first. As the officer testified, the fact that the crime remained unsolved and the victim had not been found had

2

"pretty much everything to do" with the decision to reapproach Tolth.

At the outset of Tolth's second interview, the officer explained that he was there to "provide [Tolth] with a couple of options" and share "a couple of different things that would be something of interest" that Tolth "may want to think about." Those statements, which preceded a new set of *Miranda* warnings and Tolth's signing of a *Miranda* waiver, were entirely pretextual. Once the interrogation began, the officer did not provide Tolth with "options." The items "of interest" were lies about what the investigation had uncovered. In misleading Tolth about whether the investigation had turned up "something of interest," the agent induced Tolth through deception to agree to speak on the exact topic about which he had previously decided to remain silent. That tactic fell short of scrupulously honoring Tolth's right to silence. *See United States v. Olof*, 527 F.2d 752, 753–54 (9th Cir. 1975) (per curiam).

Although the provision of a fresh set of *Miranda* warnings is the "most important factor" under *Mosley*, *Hsu*, 852 F.2d at 410, providing new *Miranda* warnings does not relieve law enforcement officers of their duty to respect a suspect's prior invocation of his right to remain silent, *see Olof*, 527 F.2d at 753–54. The "actual coercion exerted by police . . . in order to extract information" from a suspect who has previously invoked his right to silence remains relevant to the *Mosley* inquiry even after the provision and waiver of new *Miranda* warnings.

3

*Hsu*, 852 F.2d at 410–11.  Here, the law enforcement officer misled Tolth into believing the officer had valuable information to share before he signed the second waiver, yet lied to him about what the investigation had uncovered, providing no new truthful information after he signed the waiver.

The fact that Tolth's waiver was voluntary is not dispositive.  The voluntariness of a waiver or a confession under *Miranda* is a separate inquiry from whether law enforcement scrupulously honored a suspect's invocation of the right to silence under *Mosley*.  *See United States* v. *Barone*, 968 F.2d 1378, 1384 (1st Cir. 1992) ("While the suspect's state of mind is central to the voluntariness finding, the *Mosley* test focuses on what the police did, and when, after the suspect exercised his or her right to remain silent."); *United States v. Dell'Aria*, 811 F. Supp. 837, 846 (E.D.N.Y.), *aff'd*, 14 F.3d 591 (2d Cir. 1993) ("Voluntariness, however, is not the test. Once [defendant] invoked his right to silence . . . the test is dictated by *Mosley* . . . [T]he focus moves from the defendant and the voluntariness of his conduct to the conduct of the law enforcement authorities themselves."); *Fleming v. Metrish*, 556 F.3d 520, 548 n.6 (6th Cir. 2009) ("The trial court seems to have conflated the inquiry into the voluntariness of [defendant's] confession with the inquiry required under *Mosley*. The two inquiries, however, are distinct.") (Clay, J., concurring in part and dissenting in part).  Where, as here, law enforcement operates with the "obvious purpose of getting [a suspect] to abandon

4

[his] self-imposed silence," *Mosley* may be violated even if the suspect voluntarily signs a *Miranda* waiver. *Olof*, 527 F.2d at 753–54 (quoting *United States v. Barnes*, 432 F.2d 89, 91 (9th Cir. 1970) (per curiam)).

The six-day gap between interviews does not compel a different conclusion. The time between interviews is not dispositive under *Mosley*. *Hsu*, 852 F.2d at 410. As we have explained, "nothing in [*Miranda*] or in the subsequent pronouncements of the Court precludes courts from considering the egregiousness of police conduct in specific cases." *Id.* at 411. Here, the scope of the subsequent interviews and the misrepresentations by law enforcement that preceded Tolth's statements make clear that "the object of the second interrogation was to wear down [Tolth's] resistance" and induce him to relinquish his right to silence. *Olof*, 527 F.2d at 754. These are not "basic investigatory tactics," as the dissent insists. Dissent at 6. They are forbidden under controlling law.

**AFFIRMED.**

*United States v. Tolth*, No. 24-2900

BENNETT, Circuit Judge, dissenting:

Police officers interviewed Defendant Preston Henry Tolth about the disappearance of Ella Mae Begay, a Navajo woman in her 60s who had been missing for three days. Tolth invoked his right to remain silent. Consistent with their obligations under *Michigan v. Mosley*, 423 U.S. 96 (1975), the officers waited six days before reapproaching Tolth. The officers provided Tolth with fresh *Miranda* warnings, and Tolth signed a waiver of his rights. After Tolth knowingly waived his *Miranda* rights, the officers lied about the evidence they had, and Tolth confessed to hitting Begay in the head and leaving her unconscious on the side of the road.

The district court suppressed Tolth's confession. The district court concluded that the officers failed to scrupulously honor Tolth's right to silence because the officers lied to him after he waived his *Miranda* rights. The district court erred in doing so. The majority compounds the district court's error by revising the standard under *Mosley* to incorporate an officer's intent to get a suspect to talk. Maj. at 3–4. An officer's intent has never been part of the *Mosley* analysis. Because the majority's rule violates Supreme Court precedent and undermines constitutionally appropriate investigatory tactics, I respectfully dissent.

1. We review the grant of a motion to suppress de novo. *See United States v. Bridges*, 344 F.3d 1010, 1014 (9th Cir. 2003). To assess whether a suspect's right to

1

silence was scrupulously honored, we look to "the amount of time that elapsed between interrogations, the provision of fresh [*Miranda*] warnings, the scope of the second interrogation, and the zealousness of officers in pursuing questioning after the suspect has asserted the right to silence." *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988).

Each of these factors supports that Tolth's rights were scrupulously honored. Most importantly, the officers provided Tolth with fresh *Miranda* warnings. Under our precedent, "[t]he crucial factor . . . that establishe[s] a valid waiver . . . is the provision of a fresh set of warnings after the invocation of *Miranda* rights and waiver in light thereof." *United States v. Heldt*, 745 F.2d 1275, 1278 n.5 (9th Cir. 1984); *see also Grooms v. Keeney*, 826 F.2d 883, 886 (9th Cir. 1987). The second interrogation also concerned the same subject matter as the first interrogation. The officers did not badger Tolth to waive his rights. And their conduct was not overly "zealous" in a way that would undermine Tolth's waiver. They simply did their job in trying to solve a murder and did so in a way that comported with Supreme Court precedent, as well as precedent from our Circuit.

The officers also waited six days after Tolth invoked his right to silence to reengage with him. This is a significant amount of time and sufficient to dissipate any coercive pressures of interrogation. *See Hsu*, 852 F.2d at 411–12 (finding even thirty minutes between interrogations, when accompanied by fresh *Miranda*

warnings, is a significant amount of time). "The time between interviews is not dispositive under *Mosley*," Maj. at 4, but a six-day gap far exceeds the two-hour window that the Supreme Court found to be a "significant period of time" in *Mosley*, 423 U.S. at 105–06. All relevant factors indicate that the officers scrupulously honored Tolth's right to silence.

2. The majority upends multiple precedents to find that the officers' misleading statements to Tolth "fell short of scrupulously honoring Tolth's right to silence." Maj. at 3. The majority first ignores the fact that the officers did not lie to Tolth until *after* he waived his *Miranda* rights. That fact alone is dispositive that Tolth's waiver was voluntary. But beyond that fact, our precedent has long established that police officers do not coerce suspects by lying to or misleading them during interrogations. *See United States v. Orso*, 266 F.3d 1030, 1039 (9th Cir. 2001) (en banc) ("[M]isrepresenting a piece of the evidence . . . does not constitute coercive conduct." (citing *Frazier v. Cupp*, 394 U.S. 731, 737–39 (1969))). And the Supreme Court has long held that lies or misstatements preceding a *Miranda* waiver do not undermine the voluntariness of that waiver. *Moran v. Burbine*, 475 U.S. 412, 423–24 (1986) (holding that the withholding of information "is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them").

3

The majority sidesteps the facts and longstanding precedent by framing the voluntariness of Tolth's waiver as "a separate inquiry from whether law enforcement scrupulously honored a suspect's invocation of the right to silence."  Maj. at 4.  The majority announces a new rule that when "law enforcement operates with the 'obvious purpose of getting [a suspect] to abandon [his] self-imposed silence,' *Mosley* is violated even if the suspect voluntarily signs a *Miranda* waiver."  Maj. at 4 (alterations in original) (quoting *United States v. Olof*, 527 F.2d 752, 753–54 (9th Cir. 1975) (per curiam)).

The majority is incorrect that the voluntariness of Tolth's waiver is separate from whether his right to silence was scrupulously honored.  The Supreme Court emphasized that the officers' provision of new warnings was the "cardinal fact" in *Mosley*.  423 U.S. at 106–07.  But even more wrong, the majority's rule would require an examination of police officers' motives for "pretext" and "purpose," which fundamentally reshapes the question under *Mosley*.  The Supreme Court emphasized that the purpose of "scrupulously honor[ing]" the right to silence is to "counteract[] the coercive pressures of the custodial setting" for suspects "to make informed and intelligent assessments of their interests."  *Id.* at 103–04.  The inquiry has looked to whether the suspect felt coerced or unduly pressured into talking.  *See Hsu*, 852 F.2d at 409 ("[C]ourts must be satisfied that any statements made in response to such questioning were the products of the suspect's free will.").  The

4

majority distorts this question by asking whether the officers intended for the suspect to talk, rather than whether the suspect felt coerced into doing so.

The majority's recasting of *Mosley* introduces an element that has never been included in Supreme Court precedent or our precedent. The majority's rule violates the Supreme Court's instructions about the relevance of officers' intent. The Supreme Court has admonished that "the state of mind of the police is irrelevant to the question of the intelligence and voluntariness of a respondent's election to abandon his rights." *Moran*, 475 U.S. at 423. Our precedent, in recognition of this rule, establishes that an officer's deception is irrelevant unless it "deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Ortiz v. Uribe*, 671 F.3d 863, 871 (9th Cir. 2011) (quoting *Moran*, 475 U.S. at 424). The majority does not and cannot dispute that Tolth understood his rights. As part of his waiver, Tolth signed directly below this statement: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."

Beyond legally incorrect, the majority's new rule is untenable. Officers aim to get suspects to confess. Under the majority's test, officers could be found to violate a suspect's rights every time the suspect waives his right to silence because the officers are, of course, motivated to get the suspect to confess. The Supreme

5

Court warned that the right to silence cannot be interpreted in such an "absurd" manner:

> [A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.

*Mosley*, 423 U.S. at 102. The majority's new rule would prohibit police officers from using basic investigatory tactics that the Supreme Court has long protected.

*        *        *

The majority may not like that our law permits officers to deceive suspects. But the majority's distaste does not permit it to exercise "a 'chancellor's foot' veto over law enforcement practices of which it d[oes] not approve." *United States v. Russell*, 411 U.S. 423, 435 (1973). The majority cannot overturn our precedent or the Supreme Court's precedent merely because it dislikes the outcome.

After Tolth invoked his right to silence, the officers waited six days to reengage with him, provided fresh *Miranda* warnings, discussed the same topics as the last interrogation, and did not act overzealously. The officers met every factor that our precedent requires to scrupulously honor a defendant's right to silence. Despite the officers scrupulously honoring Tolth's rights, validly obtained evidence will be suppressed and a possible criminal may well go free. Thus, I respectfully dissent.

6