Ozzie **BATCHELOR**, Appellant,

v.

Hoyt C. **CUPP**, Superintendent, Oregon State Penitentiary, James Redden, Solicitor General, Walter L. Barr, Appellees.

No. 81–3037.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1982.

Decided Nov. 29, 1982.

Hollis McMilan, Fed. Public Defender, Portland, Or., for appellant.

Virginia L. Linden, Salem, Or., for appellees.

Before GOODWIN and POOLE, Circuit Judges, and WILKINS,* District Judge.

GOODWIN, Circuit Judge:

Ozzie Batchelor, an Oregon state prisoner, appeals the denial of his petition for a writ of habeas corpus. The appeal presents a question raised by a large number of habeas appeals from Oregon—whether a petitioner's failure to seek review in the Oregon Supreme Court bars federal review of the merits of the prisoner's federal constitutional claims.

It appears that the prisoner's default results from an informal arrangement by which Oregon public defenders have not sought review of their clients' cases beyond the Oregon Court of Appeals. The Oregon Attorney General has been routinely conceding that state remedies have been exhausted. Although we disapprove of this arrangement, we conclude that we are obligated to reach the merits of the federal claims in this case because no state remedies are available to Batchelor.

I

Batchelor was convicted in Multnomah County Circuit Court of first degree felony murder and burglary and sentenced to life imprisonment. The Oregon Court of Appeals reversed the burglary conviction but affirmed the felony murder conviction. *State v. Batchelor,* 34 Or.App. 47, 578 P.2d 409 (1978). Batchelor did not seek review in the Oregon Supreme Court.

Batchelor then filed a petition for a writ of habeas corpus in district court. In its return the state acknowledged that Batchelor had raised the same issues in his direct

state appeal and asserted that Batchelor had exhausted available state remedies.

The magistrate to whom this case was assigned did not consider whether Batchelor had exhausted state remedies because the point was not presented. The district court adopted the magistrate's findings and recommendations without considering exhaustion and dismissed the petition on the merits. Batchelor filed a timely notice of appeal and the district court issued a certificate of probable cause.

Because the record on appeal suggested that Batchelor had never presented his contentions to the Oregon Supreme Court, we remanded the case to the district court to allow it to reconsider the possible exhaustion issue. On remand, the district court found that: (1) Batchelor had not presented his claims to the Oregon Supreme Court; (2) Batchelor had not intentionally bypassed that remedy; and (3) no other state remedies were available to Batchelor.

At oral argument we learned why Batchelor and many other Oregon state habeas petitioners fail to present their claims to the Oregon Supreme Court. The Oregon public defenders agreed some time ago that they would not routinely seek discretionary review in the Oregon Supreme Court after the Oregon Court of Appeals ruled against their clients in direct and collateral criminal appeals. The Oregon Attorney General's office at least tacitly agreed in return that it would not argue in response to a federal habeas petition that a petitioner had not exhausted state remedies on the sole ground that the petitioner had not sought review in the Oregon Supreme Court.

II

Two related but distinct doctrines of federal habeas corpus law—exhaustion of state remedies and state procedural default—play important roles in federal habeas proceedings brought by state prisoners. Both

---

* The Honorable Philip C. Wilkins, Chief Judge, United States District Court for the Eastern District of California, sitting by designation.

doctrines stem from the basic principle of federalism that federal courts should accord due respect to the role of state courts in enforcing the prohibition against unconstitutional confinement embodied in the writ of habeas corpus. The exhaustion doctrine also serves the interests of judicial economy. State courts should have the first opportunity to examine the lawfulness of a state prisoner's confinement. If the prisoner's claim is meritorious, and if the state remedy is prompt and complete, there is no need to bring post-conviction proceedings in federal courts.

■ The procedural default doctrine is designed to ensure that state courts have a genuine opportunity to reach the merits of a prisoner's federal contentions. A prisoner's inexcusable failure to comply with a reasonable state procedure to raise federal issues in state court may bar the prisoner from raising those issues in federal court. *Engle v. Isaac,* 456 U.S. 107, 130–135, 102 S.Ct. 1558, 1572–1575, 71 L.Ed.2d 783 (1982).

A. Exhaustion of State Remedies

■ The exhaustion doctrine, first developed in case law, is now codified in 28 U.S.C. § 2254.[1] A petitioner may satisfy the exhaustion requirement in two ways: (1) by providing the highest state court with an opportunity to rule on the merits of the claim, *Carothers v. Rhay,* 594 F.2d 225, 228 (9th Cir.1979); *Cartwright v. Cupp,* 650 F.2d 1103 (9th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 1023, 102 S.Ct. 1722, 72 L.Ed.2d 142 (1982); or (2) by showing that at the time the petitioner files the habeas petition in federal court no state remedies are still available to the petitioner and the petitioner had not deliberately by-passed the state remedies. The district court and

this court may examine the exhaustion question *sua sponte. Campbell v. Crist,* 647 F.2d 956, 957 (9th Cir.1981).

The State asserted in district court that Batchelor had exhausted his state remedies. It based that assertion on the erroneous view that Batchelor had satisfied the exhaustion requirement by presenting the claims to the Oregon Court of Appeals, even though he never sought review in the Oregon Supreme Court. That view is contradicted by § 2254(c) and by *Carothers v. Rhay,* 594 F.2d at 228, and *Cartwright v. Cupp,* 650 F.2d at 1104, both of which expressly require the petitioner to present the claims to the highest state court.

Nonetheless, the state again urges us to adopt the rule that an Oregon state prisoner satisfies the exhaustion requirement merely by presenting the claims to the Oregon Court of Appeals. The Attorney General asserts that the Oregon Supreme Court is a policy-making court, not an error-correcting court, and that it would be inappropriate to require the Oregon Supreme Court to review a large number of petitions in criminal matters to uncover mere trial errors, even those of constitutional magnitude.

■ Even were we not compelled by Ninth Circuit precedent to do so, we would reject the state's argument. In our system of federalism, state courts, like federal courts, have a duty to protect rights secured by the Constitution. *See Stone v. Powell,* 428 U.S. 465, 493–494, n. 35, 96 S.Ct. 3037, 3051–3052, n. 35, 49 L.Ed.2d 1067 (1976) (citing *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 341–44, 4 L.Ed. 97 (1816)); *Ex Parte Royall,* 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886); P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Fed-*

---

1. 28 U.S.C. § 2254 provides in part:

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering

such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

*eral System,* 330–60 (2d ed. 1973) (Henry Hart's "Dialogue": "In the scheme of the Constitution [the state courts] are the primary guarantors of constitutional rights." *Id.,* at 359). In many cases the state courts can protect the rights of their citizens under their own state constitutions, without ever reaching federal questions.

■ Oregon places great value upon limiting the Oregon Supreme Court's workload, but the public defender should not be a broker for the cases that will or will not be presented to the Oregon Supreme Court. Public defenders' responsibility to represent their clients forcefully cannot be diluted by an option not to seek review of "unimportant" cases. Any system that would vest in the public defender an option to bypass state Supreme Court review deliberately while retaining the possibility of federal habeas corpus review is inconsistent with § 2254.

We are confident that Oregon can employ creative summary procedures so that state prisoners may present their federal constitutional claims to the Oregon Supreme Court before coming to federal court. In the future, the exhaustion requirement of § 2254 will not be deemed satisfied until the petitioner demonstrates that his claim has been presented to the state's highest court, or that no state remedy is available and that the nonavailability was not caused by a deliberate bypass.

■ Although Batchelor did not affirmatively satisfy the exhaustion requirement, the district court correctly determined that he had no available state remedies when he filed his federal habeas petition. The time for seeking review of the judgment of the Oregon Court of Appeals had long since lapsed and state post-conviction relief was unavailable. *See* Or.Rev.Stat. § 138.550(2) (precluding post-conviction relief unless claim was not asserted and could not rea-

sonably have been asserted on direct appellate review). This state of affairs brings us to the question of passive exhaustion. By failing to act the prisoner forfeited whatever state court review may have been available but for that failure. The prisoner comes into federal court with a constitutional claim for which there is, in fact, no state remedy, and the question is whether the federal court should hear it. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

This court recently returned a case to the district court for an investigation into the reasons for the failure to exhaust with reference to specific questions which appeared to have been raised for the first time in federal court. *See Ventura v. Cupp,* 690 F.2d 740, (9th Cir., 1982). In *Ventura,* however, the record revealed that different issues had been raised by the petitioner at different levels of review, and no explanation for the failure to exhaust could be found in the record.

■ In our case, the reason for the petitioner's failure to exhaust appears to be neglect upon the part of counsel. In light of the practice that had grown up (state acquiescence in the failure to appeal, and the state's participation in the representation to the district court that state remedies in fact had been exhausted), the neglect may be excusable. Clearly there was no deliberate bypass as that term is usually understood. *Fay v. Noia,* 372 U.S. 391, 438–39, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963).[2]

■ In the Supreme Court, state procedural default has not been a bar unless the state has raised it at the district court level. *Estelle v. Smith,* 451 U.S. 454, 468 n. 12, 101 S.Ct. 1866, 1876 n. 12, 68 L.Ed.2d 359 (1981); *Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127 n. 1, 65 L.Ed.2d 86 (1980). This court, also, has jurisdiction to

---

2. The procedural default doctrine is based on comity and is not jurisdictional; the federal courts have the power to reach the merits notwithstanding a state procedural default. *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). That this remains so is

implicit in the holding that the federal courts will review federal issues notwithstanding a state procedural default if the petitioner shows cause and prejudice for the default. *See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

reach the merits. If the state has not raised the cause and prejudice issue, the state can be held to have waived it. The question in the case now before us is whether, on this record, we should reach the merits. Batchelor went as far as he could go, under the circumstances, and the state treated his remedies as exhausted.

■ Sound policy reasons support the view that the states should bear the responsibility of asserting state procedural issues. If a federal habeas petitioner has failed to comply with state procedures, the state's representative is in the best position to identify the procedural default and argue in federal court that the state has an interest in barring federal review of the merits. Once the state has raised the point, however, the petitioner has the duty to show whether the state procedural default is one that can be excused, and, if so, whether the default prejudiced a substantial right. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). These questions, when raised in the district court, are almost always more complicated and time consuming than are the merits of the petitioner's federal claim. *See Norris v. United States,* 687 F.2d 899 (7th Cir., 1982). We decline, in this case, to ask the district court to undertake the extra demands of reviewing the state trial record to locate possible reasons to bar review for procedural default when none has been suggested by the state.

Accordingly, we turn to the merits.

### III

**A. Merits**

In February 1976, Gladys Peterson was murdered and her apartment burglarized. During the summer of 1976, police narcotics informant George Bozman sold some of the property stolen in the burglary and told police that he knew where the rest of the property had gone. He identified Ilene Anderson and Elvia Dawson as the persons who had helped sell the property. Dawson and Anderson claimed that Batchelor had given them the property at Bozman's home, a local clearinghouse for small sales of per-

sonal property. They stated that they did not know the property had been stolen.

After his indictment, Batchelor told police that Anderson, Dawson, Bozman, and a fourth person had committed the crimes and that he had been an innocent bystander. He stated that he had previously known these individuals and had picked them up the night of the murder because they had car trouble. He stated that he had accompanied the others to Peterson's apartment, but that he thought that they were directing him to a "drug house" and that he had remained in the car while the others robbed and killed Peterson. In another conversation, however, he stated that he stepped half-through the apartment doorway. Batchelor also told one of his cell mates that he had killed Peterson himself, and did not mention any accomplices.

**B. Scope of Cross-Examination**

At trial, Batchelor sought to impeach Dawson and Anderson by inquiring into their admitted drug addiction or use of drugs near the time of the crime. The trial court barred any evidence about general heroin use and, after Dawson and Anderson denied taking heroin on the night of the burglary, barred any questions about particular use. Batchelor argues that this ruling denied him his rights to confrontation and due process and prejudiced his defense, which rested on his opportunity to challenge the veracity and motive of prosecution witnesses he contended had participated in the crime.

■ The Sixth Amendment guarantees an accused the right to confront and cross-examine adverse witnesses. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *United States v. Kizer,* 569 F.2d 504, 505 (9th Cir.), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978). Yet trial courts have broad discretion in limiting the scope of cross-examination, especially where the Sixth Amendment interest may conflict with the danger of harassing witnesses or unduly prejudicing the jury. *Chipman v. Mercer,* 628 F.2d 528, 530–31 (9th Cir. 1980); *United States v. Kiz-*

er, 569 F.2d at 505. We are particularly circumspect in reviewing the trial court's ruling where the cross-examination is intended to explore the drug addiction history of a witness.

■ The trial court did not violate the Sixth Amendment in limiting the scope of cross-examination. The jury had before it some evidence that Dawson and Anderson were heroin addicts. The woman who bought Peterson's coat from Anderson testified that Anderson had "needed a fix" on the day she sold the coat. Bozman testified that Anderson and Dawson both used heroin and that they may have used the drug on the night of the murder.

Under the circumstances, the jury had sufficient information to appraise the bias and motives of the witnesses. Batchelor was not deprived of his confrontation or due process rights. *See Skinner v. Cardwell,* 564 F.2d 1381, 1389 (9th Cir.1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978).

## C. Bozman's Competency

Batchelor contends that Bozman was an incompetent witness and that Batchelor's due process rights were violated when the trial court allowed him to testify at trial. At the competency hearing both prosecution and defense psychiatrists testified that Bozman was unable to perform simple mathematical calculations, had a poor memory of recent events, evidenced some amnesia, and that his problems with accuracy were compounded by brain damage, a past history of serious drug abuse, and by schizophrenia.

Bozman's testimony was marked with inconsistencies and he was apparently able to respond to only a few questions on cross-examination. His testimony on direct examination, however, had been surprisingly consistent. After listening to Bozman testify, the court ruled that Bozman was competent to testify before the jury.

■ Habeas corpus relief for an asserted due process violation is available only where the state court's action is arbitrary

or fundamentally unfair. *Cooks v. Spalding,* 660 F.2d 738, 739 (9th Cir.1981), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982). The trial court acted well within the scope of its discretion by admitting Bozman's testimony and allowing the jury to determine the weight properly to be given that testimony.

## D. Admission of Gruesome Photographs

The state introduced several photographs of the victim's body. Apparently the murderer had dragged Peterson from the bedroom to the living room and her night clothing had bunched up around her shoulders. When the police found her body, however, her lower torso and legs were covered by two blankets. The state's photographs included shots both with and without the blankets, and the defense objected to the latter photographs of Peterson's naked body, and in particular to those exposing her genital area and lower body where there were no wounds.

■ Batchelor argues that these photographs have no probative value to any element of the crime, and were not needed to show that the victim was dragged—a fact that Batchelor did not dispute at trial. Even if the photographs were necessary on this point, however, Batchelor argues that the court should have exercised its discretion to delete those pictures showing the genital area as in *Maxwell v. United States,* 368 F.2d 735, 740 (9th Cir.1966). He further argues that the pictures were designed to suggest the issue of rape, a crime not charged, in violation of due process. In sum, Batchelor contends that the prejudicial effect of the photographs violated his due process rights. The admission of photographs lies largely within the discretion of the trial court, whose ruling will not be disturbed on due process grounds in a federal habeas corpus proceeding unless the admission of the photographs rendered the trial fundamentally unfair. *Cooks v. Spalding,* 660 F.2d at 739. The trial court did not commit error, much less error of constitutional magnitude in admitting the photographs.

## IV

The judgment of the district court dismissing Batchelor's petition for a writ of habeas corpus is affirmed on the merits.