Richard GROOMS, Petitioner-Appellant,

v.

J.C. KEENEY, Superintendent,
Respondent-Appellee.

No. 86–4287.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1987.

Decided Sept. 1, 1987.

Marianne D. Bachers, Eugene, Or., for petitioner-appellant.

David L. Kramer, Salem, Or., for respondent-appellee.

Before ANDERSON, TANG and NOONAN, Circuit Judges.

TANG, Circuit Judge:

Grooms, an Oregon state prisoner, appeals the district court's dismissal of his federal habeas corpus petition, 28 U.S.C. § 2254, challenging his conviction of aggravated murder on the grounds that (1) his confession was improperly admitted and (2) the Oregon aggravated murder statute violates due process and equal protection. We affirm.

## BACKGROUND

On August 30, 1978, police officers in Lynnwood, Washington, arrested Grooms on warrants originating in Portland, Oregon for two counts of theft. At the request of the Portland police department, the arresting officers did not mention that Grooms was also wanted for questioning about the robbery and murder of Edward Klemmer. The officers advised Grooms of his *Miranda* rights and he invoked his right to remain silent.

Four hours later, at 11:00 p.m., two Portland police detectives arrived in Lynnwood and began interrogating Grooms in the presence of one of the arresting officers. The arresting officer did not tell the Portland detectives that Grooms earlier had chosen to remain silent. The Portland officers advised Grooms of his constitutional rights and Grooms signed a formal waiver. The officers first asked Grooms about the thefts he had earlier declined to discuss, and he confessed to the thefts. The officers then led into questions about Klemmer by asking Grooms about one of the stolen articles that he had allegedly tried to sell to Klemmer. Grooms then confessed to robbing and beating Klemmer by striking him in the head with a hammer. The detective asked Grooms to repeat the interview so it could be tape recorded. Grooms agreed.

The tape recording reveals that Grooms was re-advised of his constitutional rights and, when asked if he wanted an attorney, answered "I don't know." The officer told him he could think about it, repeated he could have a lawyer, told him he could change his mind, then said "can we go ahead without a lawyer for awhile and talk on the tape?" When Grooms said "Sure," the officer asked if he was sure and if he had thought about it. After completing the interrogation, the detectives told Grooms that Klemmer had died from the head injuries Grooms inflicted, and that Grooms was being charged with aggravated murder.

The state trial court conducted a hearing on the voluntariness of the confession and concluded it was voluntary. *State v. Grooms*, 47 Or.App. 1001, 1003, 615 P.2d 1130, 1132 (1980). Grooms entered a plea of not guilty, waived jury trial and was convicted of aggravated murder pursuant to Or.Rev.Stat. § 163.095. *Grooms*, 615 P.2d at 1131. He was sentenced to life imprisonment with a minimum twenty year term before parole in accordance with Or. Rev.Stat. § 163.105(2). The Oregon Court of Appeals affirmed the conviction in the face of the same constitutional challenges raised in Grooms's federal habeas petition. *Grooms*, 615 P.2d at 1131.

Grooms did not appeal his conviction to the Oregon Supreme Court. He filed a federal habeas petition on September 4, 1984. The magistrate recommended dismissal for failure to exhaust, and Grooms moved to dismiss the unexhausted claims and for reconsideration of the exhausted claims. The magistrate granted the motion and recommended dismissal of the petition. Grooms moved for reconsideration and the district court conducted de novo review, then adopted the magistrate's findings and recommendation. Grooms timely appealed. The district court issued a certificate of probable cause and granted permission to Grooms to proceed in forma pauperis.

## ANALYSIS

### Standard of Review

This court reviews de novo a district court's decision on a habeas corpus petition. *Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). The factual conclusions of the state court are entitled to a presumption of correctness. 28 U.S.C. § 2254(d). The voluntariness of a confession is a legal conclusion which must receive independent federal determination. *Miller v. Fenton,* 474 U.S. 104, 113, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985).

### Exhaustion

As a preliminary matter, we must decide whether the state has waived objection to failure to exhaust. A state prisoner must first exhaust his state remedies. 28 U.S.C. § 2254(b); *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir.1986). If the state fails to object to the failure to exhaust, it is within this court's discretion to treat the failure as a waiver and proceed to review of the merits of the habeas petition. *See Granberry v. Greer,* —— U.S. ——, 107 S.Ct. 1671, 1674–75, 95 L.Ed.2d 119 (1987).

■ In this case, Grooms did not seek Oregon Supreme Court review of his conviction because of an agreement among the Oregon Supreme Court, the state attorney general, and the state public defender that state supreme court review was not a necessary prerequisite to satisfaction of the exhaustion doctrine. We have expressly disapproved this arrangement. *Batchelor v. Cupp,* 693 F.2d 859, 862–63 (9th Cir. 1982), *cert. denied* 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983). However, we have also held that when a habeas petitioner's bypass of state remedies preceded *Batchelor's* warning, and the time for direct appeal has expired, the state's failure to object to the procedural default will be treated as a waiver. *Branch v. Cupp,* 736 F.2d 533, 535 (9th Cir.1984), *cert. denied,* 470 U.S. 1056, 105 S.Ct. 1764, 84 L.Ed.2d 826 (1985); *Allbee v. Cupp,* 716 F.2d 635, 635 (9th Cir.1983); *Batchelor,* 693 F.2d at 863–64. Since Grooms's conviction was affirmed by the Oregon Court of Appeals on August 25, 1980, *Grooms,* 47 Or.App. at 1041, 615 P.2d at 1134, the time for direct appeal had expired before *Batchelor* was decided in 1982, and the failure to object should be treated as a waiver in this case too.

### Admission of Confession

#### (a) Right to Silence

Grooms contends that because he invoked his right to silence when first questioned by the Washington police, the subsequent questioning by Portland officers violated his constitutional rights. In *Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975), the Supreme Court held that when a suspect has asserted a wish to remain silent, the request must be "scrupulously honored." In that case, no *Miranda* violation occurred when a suspect first invoked a right to silence but *Miranda* warnings were given at the outset of a second interrogation conducted by a different police officer at another location about an unrelated crime. *Id.* 423 U.S. at 104, 96 S.Ct. at 326.

Grooms argues that his treatment did not follow the *Mosley* rule because one of the arresting officers was present at the second interrogation, the interrogation oc-

curred in the same location, and the questioning covered the same crimes he had refused to discuss. The magistrate did not find these factors sufficient to distinguish *Mosley* and neither do we.

■ We have stated that the crucial factor establishing a valid waiver "is the provision of a fresh set of warnings after the invocation of *Miranda* rights and waiver in light thereof." *United States v. Heldt*, 745 F.2d 1275, 1278 n. 5 (9th Cir. 1984) (commenting on why a waiver was found valid in *United States v. Boyce*, 594 F.2d 1246 (9th Cir.), *cert. denied*, 444 U.S. 855, 100 S.Ct. 112, 62 L.Ed.2d 73 (1979)). In *Heldt*, we indicated that the fact that a subsequent interrogation pertains to the same crime is not important. 745 F.2d at 1278 n. 5. Thus *Mosley* controls this case and the fresh warnings to Grooms are sufficient to create a valid waiver despite the fact that he was questioned about the same crimes he had earlier declined to discuss.

**(b) Scope of Interrogation**

■ Grooms contends he cannot be viewed as having made a knowing and intelligent waiver of his *Miranda* rights because he did not know the nature of the crime under investigation when he confessed to robbing and beating Klemmer. The recent Supreme Court decision in *Colorado v. Spring*, —— U.S. ——, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) is dispositive of this contention. The Court held that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Id.* 107 S.Ct. at 859. In *Spring* the failure to inform a suspect arrested on a firearms charge that he would be asked if he had shot someone did not "affect Spring's decision to waive his Fifth Amendment privilege in a constitutionally significant manner." *Id.* Similarly, Grooms's ignorance of the fact Klemmer had died from the injuries he

inflicted does not invalidate his waiver of fifth amendment rights, because the police do not have to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Moran v. Burbine*, 475 U.S. 412, ——, 106 S.Ct. 1135, 1142, 89 L.Ed.2d 410 (1986).

**(c) Right to Counsel**

Grooms contends he made an equivocal request for counsel when he answered "I don't know" in response to the question whether he wished to consult with an attorney. Because the officer continued to ask questions, Grooms argues his sixth amendment right was violated.

The " 'settled approach' " to waiver questions requires courts " 'to give a broad rather than a narrow, interpretation to a defendant's request for counsel.' " *Connecticut v. Barrett*, —— U.S. ——, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987) (quoting *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986)). As the *Barrett* court noted, interpretation is required when the defendant's words are ambiguous. 107 S.Ct. at 832. The Ninth Circuit has held that if an ambiguous or equivocal request for counsel is made, further questioning is proper only for the purpose of clarifying the request. *United States v. Rodriguez-Gastelum*, 569 F.2d 482, 484–85 (9th Cir.) (en banc), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978). In this case, the officer asked Grooms if he wished to think about requesting a lawyer, reminded him he had earlier said he did not want a lawyer, told him he could change his mind, and finally asked if he could go ahead without a lawyer.

Grooms argues these were not clarifying questions, but improper efforts to cast doubt on his request, in violation of the rule of *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (per curiam). In *Smith* the Court held that a

suspect's "*post request* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* 469 U.S. at 100, 105 S.Ct. at 495 (emphasis in original). Grooms argues that the inverse should also be true and that his pre-request responses should not have been used by the officer to influence clarification of an indecisive request for counsel.

█ The *Smith* rule does not apply here, because it concerned an unequivocal request for counsel, *id.* at 96–97, 105 S.Ct. at 493–94, and there is no persuasive reason to extend or invert its rule to fit the facts of this case. The questions and comments directed to Grooms were an effort to clarify whether he had changed his mind and now wanted a lawyer. Thus, the questioning fits within the prescription of *Rodriguez-Gastelum*, 569 F.2d at 484.

### (d) Knowing and voluntary waiver

A valid waiver of fifth and sixth amendment rights must be both voluntary and knowing and intelligent. *Moran*, 475 U.S. at ——, 106 S.Ct. at 1141. A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion or deception." *Id.; see also, Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (voluntariness depends on absence of police overreaching, not on free choice in the broader sense). A waiver is knowing and intelligent if it is "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at ——, 106 S.Ct. at 1141. Analysis of the validity of a waiver depends " 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

█ A federal court must conduct an independent review of the voluntariness of a confession. *Miller v. Fenton*, 106 S.Ct. at 451. In this case the magistrate reviewed the trial transcript and transcription of the tape of the interrogation and concluded Grooms made a voluntary, intelligent and knowing waiver of his rights. We agree.

### Oregon Aggravated Murder Statute

Grooms argues that the aggravated felony murder statute under which he was convicted violates his rights to equal protection and due process because the statute provides the same elements as the felony murder statute.[1] The sentence for felony murder is life imprisonment, Or.Rev.Stat. § 163.115(3), while the aggravated felony murder sentence is life imprisonment with a minimum of 20 years before parole, Or. Rev.Stat. § 163.105(2).

█ The Oregon Supreme Court has concluded these statutes do not violate equal protection because the aggravated felony murder statute requires the additional element of personal commission of the homicide. *State v. Reynolds*, 289 Or. 533, 538–39, 614 P.2d 1158, 1161–62 (1980); *State v. Cohen*, 289 Or. 525, 614 P.2d 1156 (1980). These decisions reflect a proper application of the Supreme Court's decision in *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979), that there is no equal protection violation when two statutes prohibit the same conduct and a prosecutor chooses the one to apply unless there is discrimination against a particular class of defendants. There is no contention of discrimination in

---

1. Aggravated felony murder, Or.Rev.Stat. § 163.095, is a felony murder (defined in § 163.105) which the defendant personally commits. Felony murder, Or.Rev.Stat. § 163.-105(1)(b), is charged for a death which is caused during the commission of certain enumerated crimes, including robbery.

this case, and thus no violation of equal protection.

 It is also clear that there is no due process violation in this statutory scheme. The Supreme Court held in *Batchelder* that two statutes may provide different penalties for identical conduct without offending due process, so long as each statute provides clear notice of the forbidden conduct and the consequences of violation. 442 U.S. at 123, 99 S.Ct. at 2203. The Oregon felony murder and aggravated felony murder statutes both give clear notice of the prohibited conduct.

Further there is no due process violation in permitting a prosecutor to elect to prosecute under either statute, *id.* at 124, 99 S.Ct. at 2204, even if one imposes felony penalties and the other merely misdemeanor penalties, *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); *United States v. Mackie*, 681 F.2d 1121, 1122 (9th Cir.1982).

The judgment is AFFIRMED.