**Michael T. SMITH,
Petitioner–Appellant,**

**v.**

**Roger V. ENDELL, Commissioner of the Department of Corrections, State of Alaska, Respondent–Appellee.**

**No. 86–4357.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1988.

Decided Nov. 14, 1988.

Peggy A. Roston, Bankston, McCollum & Fossey, Anchorage, Alaska, for petitioner-appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, Alaska, for respondent-appellee.

Before BROWNING, NORRIS and O'SCANNLAIN, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Smith was convicted in the Superior Court of the State of Alaska for the murder of Ron and Darcelle Cole. He appealed to the Alaska Court of Appeals asserting, among other claims, that the Superior Court failed, in violation of rules established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to suppress a confession obtained in the absence of counsel through in-custody, police-initiated interrogation after Smith had requested an attorney. The Alaska Court of Appeals affirmed; the Supreme Court of Alaska denied review. The United States District Court for the District of Alaska dismissed Smith's petition for habeas corpus. This appeal followed.

## I

The governing law is clear. Under *Miranda* a person in custody must be informed prior to interrogation that he has a right to remain silent and to have a lawyer present. *Miranda v. Arizona*, 384 U.S. at 479, 86 S.Ct. at 1630. If he requests counsel, interrogation must cease until an attorney is available. *Id.* at 474, 86 S.Ct. at 1628. Not only must all questioning stop when a suspect expresses his desire for counsel, but questioning can be resumed without a lawyer only if the suspect himself initiates further communication—waiver cannot be found from a suspect's continued response to questions, even if he is again advised of his rights. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981).

Requests for counsel are to be given broad effect even when less than all-inclusive. *Connecticut v. Barrett*, 479

U.S. 523, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987). A suspect's responses to further questioning cannot be used to cast doubt upon the adequacy of his initial request. *Smith v. Illinois*, 469 U.S. 91, 97–99, 105 S.Ct. 490, 493–94, 83 L.Ed.2d 488 (1984) (per curiam). When the initial request is ambiguous or equivocal, all questioning must cease, except inquiry strictly limited to clarifying the request. *United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir.1985), *after remand*, 833 F.2d 1284, 1287 (1987); *United States v. Nordling*, 804 F.2d 1466, 1470 (9th Cir.1986).

The facts are undisputed. Smith was arrested for possession of cocaine and questioned by state troopers. The troopers advised Smith of his *Miranda* rights. Smith waived them. He discussed the drug charges with the troopers for approximately an hour, admitting he had been distributing cocaine, Ron Cole was his supplier, he owed Cole $15,000, and Cole maintained a list of persons who owed him for cocaine, one of whom was Smith. The trooper asked Smith if he shot Cole. Smith denied it. The trooper pressed the point. Smith's initial request for counsel followed:

Smith: Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?

Trooper: Well, it ... it wouldn't be fair to you to say that we weren't Mike.

2nd Trooper: Yeah.

Smith: Because if you are, it's ... it's a serious charge and I think I should have counsel, if that's where ... what you're ... where you're coming from, just tell me if you are.

The troopers reminded Smith he himself had pointed out that anyone in Cole's list of debtors who owed him money for drugs "would certainly have reason enough to kill him," to which Smith responded, "Yeah. I admitted my name is probably in it." The troopers then said:

[L]et's face it, you're a person who dealt with Ron Cole, and you're a person who owed him a lot of money.

The troopers added that if Smith still did not regard himself as a suspect:

> [W]e have no choice but to say well, he's ... he's told us everything about what the suspect should look like, and we're sitting here saying, well you're ... you're right, we think that's probably what the suspect looks like too.

Smith responded, "Yeah," after which the trooper again repeated the evidence against Smith:

> Okay. And if you for one minute you think that we don't think the suspect is someone who is friends with him, someone who dealt with dope and someone who was in debt to him, then absolutely, you're correct.

Smith reacted by pointing out that others were equally suspect:

> I know, but I'm saying there's probably a ... at least a dozen people like me that have known him for years and in the same position. They owe him money. They're friends [ ] in the same position as I am.

The troopers responded by reminding Smith he had been advised of his right to counsel and if he wanted counsel he should not hesitate to get one, but if "[y]ou want to talk to us about Ron Cole's dealings, you want to talk about the murder and suspects, anybody, will talk with you."

Smith then made his second statement regarding representation by counsel, saying: "I don't know if I need one or not. That's why I'm trying to make my mind up, if I need to go that route for myself, you know."

A trooper responded with still another recitation of the circumstances connecting Smith with the murder:

> Alright ... Well, you ... you heard what ... you heard what I said. I ... you yourself say anybody that would be in that notebook could be ... could be logical suspect, and you certainly agree, at least with our line of reasoning, in picturing the kind of person we have as a suspect, an associate, somebody that

dealt dope and somebody that's in [the] notebook and in debt up to his ass.

This part of the interview concluded:

SMITH: Um'hum.

TROOPER: Now, Mike, you've sit here for the last hour or so and we've ... we've talked about your background; you've been pretty open and honest at least what we know about you, okay.

SMITH: Um'hum.

TROOPER: Ah, in regards with your dealings with Ron ...

At this point, the troopers shut off the tape recorder for approximately twenty-one minutes to "get some coffee." While the tape was off, Smith confessed to the murders. The troopers then turned the recorder back on, and Smith repeated his confession.

The Superior Court denied Smith's motion to suppress, holding that in his two references to a lawyer Smith was merely "underscoring the fact that he has a right to counsel.... He's undecided whether he needs one and elects to go forward." The Alaska Court of Appeals affirmed, stating Smith's first reference to having an attorney "simply indicated that Smith was aware that he had a right to counsel;" and his second reference "indicat[ed] he was trying to decide whether to contact an attorney, but continued with the interviews."

The United States Magistrate recommended denial of Smith's petition for habeas corpus. The magistrate recognized that *Smith v. Illinois* barred use of Smith's second reference to counsel to cast doubt upon his initial request, and said it was not clear whether in evaluating Smith's request for counsel the Alaska Courts had relied upon both statements. The magistrate characterized Smith's first statement as a conditional request for counsel. "A statement of conditional intent," the magistrate said, "is an ambiguous statement, at least in the context of this dialogue," thus bringing into play the doctrine that only questions designed to clarify whether the subject desires an attorney were permissible. "Where a suspect's desires are expressed in an equivocal fashion," the magistrate continued, "it is permissible for the ques-

tioning officer to make further inquiry to clarify the suspect's wishes."

The magistrate characterized the troopers' response to Smith's initial request as consisting of "statements as to the focus of their investigation and then to Smith's right to counsel." The magistrate concluded, "Their statements did not embrace the form of further interrogation. Informing Smith of the available evidence against him in response to his question as to whether he was a suspect did not fall within the realm of interrogation."

The magistrate recognized that the investigators "might have focused more directly on Smith's equivocations as to whether he sought to invoke his right to counsel. However, their brief continuation of their discussion of the type of person they considered as a suspect was not error of constitutional dimension," and "did not exceed the permissible boundary of the 'equivocalness exception.'" In a Supplemental Report, the magistrate reiterated that the investigators "did not act improperly by addressing the ambiguity of whether or not Smith was a suspect as well as reminding Smith of the previous advisement of rights that he received from the Investigator since this questioning was directed toward clarifying Smith's desire for counsel."

The district court stated it had reviewed the magistrate's report, was "satisfied that Petitioner's constitutional right to counsel was not effectively invoked, and therefore the questioning which preceded and led to his confession was permissible." The court

adopted the magistrate's recommendation and dismissed the petition.

## II

We believe the magistrate's analysis underlying the district court's order was flawed in two critical respects. First, Smith's initial request for counsel was not equivocal or ambiguous. It was conditional, but the investigators knew the condition to be satisfied. Communication with Smith with respect to the matter under investigation therefore should have ceased until an attorney was present. Second, even if Smith's initial request was unclear, the interrogators' response was inappropriate because it was not designed to clarify the request. On either hypothesis, the confession must be suppressed.

## A

Smith's initial request was clear enough: if the troopers regarded him as a suspect in the murder of Ron and Darcelle Cole, he wanted an attorney. The request was not ambiguous; Smith was uncertain whether the troopers considered him a suspect, but if they did, his intent was clear: "I should talk to a lawyer." In this respect his statement was not equivocal; there was no "might" or "maybe" or "perhaps."[1]

■ We agree with the magistrate that Smith's request was conditional; it was not to be operative unless the troopers suspected Smith of the murders; if they did, however, Smith wanted counsel. The troopers could not have mistaken Smith's meaning.[2]

---

1. We disagree with the dissent's view that "Smith's statements evince no more than an ambiguous or equivocal assertion of the right to counsel." Dissent at 1534 n. 1. The dissent concedes, as it must, that Smith made clear he was "interested in talking to a lawyer if the police were looking at him as a suspect." *Id.* at 1534. It is difficult to regard Smith's statement as ambiguous and equivocal when the statement "I do want an attorney before it goes very much further" is not. *See Oregon v. Bradshaw,* 462 U.S. 1039, 1041–42, 103 S.Ct. 2830, 2832–33, 77 L.Ed.2d 405 (1983) (plurality opinion).

2. If there were any doubt whether Smith invoked his right to counsel his request should have been broadly construed and the uncertainty resolved in favor of invocation of the right.

*Barrett,* 107 S.Ct. at 832; *Michigan v. Jackson,* 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed. 2d 631 (1986); *Grooms v. Keeney,* 826 F.2d 883, 886 (9th Cir.1987); *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 122–23 (7th Cir. 1987); *Wilson v. Murray,* 806 F.2d 1232, 1235 (4th Cir.1986); *McCree v. Housewright,* 689 F.2d 797, 801 (8th Cir.1982).

Faced with an ambiguous or equivocal request, the "settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel." *Jackson,* 475 U.S. at 633, 106 S.Ct. at 1409. "Doubts must be resolved in favor of protecting the constitutional claim." *Id.* It is only when this broad interpretation fails to clarify the request that further questioning directed

Since they knew him to be a suspect, questioning should have stopped until an attorney was present, unless Smith himself initiated its renewal.

Smith's repetition of his inquiry as to whether he was a suspect by asking the troopers "where you're coming from" was not an initiation of a new exchange. The question was a continuation of a dialogue that had not been terminated. *See Christopher v. Florida,* 824 F.2d 836, 845 (11th Cir.1987).[3]

It is also irrelevant that Smith was advised of his right to counsel both before and after he asked for an attorney or that the interrogation was conducted without coercion. *See Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 2093, 2100, 100 L.Ed.2d 704 (1988); *Smith v. Illinois,* 469 U.S. at 99 n. 8, 105 S.Ct. at 495, n. 8; *Edwards v. Arizona,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85. The Supreme Court has re-

peatedly emphasized that the *Edwards* rule is a "rigid," "bright line," "per se" rule.[4] The conduct it prohibits is not wrongful in itself. The purpose of the rule is wholly prophylactic: "By prohibiting further interrogation after the invocation of these rights, we erect an auxiliary barrier against police coercion." *Barrett,* 107 S.Ct. at 832.[5]

## B

■ Even if Smith's request were regarded as in some way ambiguous or equivocal, the troopers did not respond by limiting their inquiry to clarifying Smith's desire for counsel. They did not give Smith a direct answer to the simple question he asked: whether he was a suspect. Instead they used his question as an occasion for repeatedly cataloguing the evidence connecting him with the murders.

---

solely toward resolving the ambiguity is permitted.

**3.** The State argues that we are required by 28 U.S.C. § 2254(d) to regard as presumptively correct the state court findings "that Smith was 'merely underscoring' the fact that he had a right to counsel, that he knew he had a right to counsel, and that he ultimately elected to go forward without counsel." As the district court concluded, the state court's characterization of Smith's words is hardly a finding of fact. There is no dispute that Smith knew he had a right to counsel, nor is there any factual dispute as to what happened. The constitutional effect of the dialogue is a legal question subject to our independent review. *Cf. Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985); *United States v. Crespo de Llano,* 838 F.2d 1006, 1015 & n. 2 (9th Cir.1988); *Grooms v. Keeney,* 826 F.2d at 885.

Moreover, the superior court's conclusion that Smith ultimately elected to go forward without an attorney rested upon statements made by Smith as a result of continued interrogation following his initial request for counsel. But consideration of these subsequent statements is barred by *Smith v. Illinois,* 469 U.S. at 97–99, 105 S.Ct. at 493–95. As the Supreme Court explained, "Using an accused's subsequent responses to cast doubt on the adequacy of the initial request *itself* is even more intolerable. 'No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak

through an attorney or not at all.' " *Id.* at 98–99, 105 S.Ct. at 494 (citation omitted).

Although in this case the magistrate was aware of the rule of *Smith v. Illinois,* he nonetheless relied upon Smith's later statement that he was uncertain whether he needed counsel to support the magistrate's conclusion that Smith did not sufficiently invoke the right to counsel. The dissent reflects the same error. Dissent at 1536 ("Smith's latter statements merely show that he had no intention of unambiguously invoking his right to counsel....").

**4.** *See Arizona v. Roberson,* 108 S.Ct. at 2098; *Michigan v. Jackson,* 475 U.S. at 634, 106 S.Ct. at 1408; *Smith v. Illinois,* 469 U.S. at 98, 105 S.Ct. at 494; *Solem v. Stumes,* 465 U.S. 638, 646–48, 104 S.Ct. 1338, 1343–44, 79 L.Ed.2d 579 (1984); *Oregon v. Bradshaw,* 462 U.S. at 1044, 103 S.Ct. at 2834.

**5.** Contrary to the dissent, the holding in this case neither draws new lines nor creates new categories. *Cf.* Dissent at 1536–1537 & n. 5. Rather, it declines to create an exception to *Miranda* and *Edwards* allowing police to ignore clear and unequivocal requests for counsel when the individual indicates his request need only be honored if the police consider him a suspect.

This approach presents no "potentially thorny new analytical requirement." Dissent at 1536. When an individual responds to interrogation by stating "if I am a suspect, I want counsel," and then asks "am I a suspect?" police officers will readily recognize the correct response and its consequences.

The resulting drawn-out dialogue [6] was wholly unnecessary to the only proper purpose of further questioning: the clarification of Smith's initial statement that if he was a suspect he wanted counsel. Smith asked only *whether* he was a suspect, not *why* he was a suspect. The repeated recitations of the circumstances tying Smith to the murders did nothing to clarify Smith's desire for counsel. It was a powerful— though subtle—inducement for him to confess. *See United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir.1986).

The prophylactic rule established in *Miranda* and *Edwards* was intended to preclude precisely the kind of technique employed by the troopers in this case to induce Smith to forego his initially expressed desire for counsel and incriminate himself. Questioning after an ambiguous or equivocal request for counsel "is to be limited to ... clarification and cannot be used as a means of eliciting any incriminating statements from the suspect relating to the subject matter of the interrogation." *United States v. Cherry*, 733 F.2d 1124, 1130 (5th Cir.1984) (citation omitted); *Fouche*, 776 F.2d at 1405. As the Supreme Court said in *Smith v. Illinois:* "In the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching'—explicit or subtle, deliber-

ate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." 469 U.S. at 98, 105 S.Ct. at 494 (citations omitted).

The State concedes that an equivocal request for counsel permits the police only to ask the suspect questions that seek to clarify and precludes the police from supplying information to a suspect as a strategy to elicit incriminating statements. The State argues, however, that this rule does not apply when the suspect asks whether he is a suspect and appears to desire this information to assist him in deciding whether to invoke his right to counsel.[7] As we have noted, however, "Questions aimed at clarifying the desire for counsel must be strictly limited to that purpose." *Fouche*, 776 F.2d at 1405. The proper response in this case was simply to inform Smith he was a suspect.[8] Certainly nothing more was required to "clarify" the request, and therefore nothing more was allowed under *Edwards* and *Fouche*.

Although agreeing that Smith's request was conditional and the condition had been satisfied, the magistrate upheld the continuing dialogue between the troopers and Smith, on the ground the exchange was not "interrogation." [9] The *Edwards* prophylac-

---

**6.** *See supra* at 1529–1530.

**7.** The magistrate relied upon *United States v. Rodriguez–Gastelum*, 569 F.2d 482 (9th Cir.1978) (en banc), for the proposition that "[a]ll communication between a suspect and a law enforcement officer is not barred after the suspect invokes his right to counsel." However, *Rodriguez–Gastelum* was decided prior to *Edwards,* and, as the state concedes, was significantly undermined by *Edwards.* Appellee's Brief at 28. *See United States v. Thierman*, 678 F.2d 1331, 1338 (9th Cir.1982) (Wallace, J., dissenting). Our decision in *Fouche* makes clear that the only permissible communication following an equivocal request for counsel is that which is aimed at clarifying the request.

**8.** The State argues the *Fouche* rule requiring the police to clarify a suspect's intentions is inapplicable to this case because Smith's initial statement "was not an ambiguous or equivocal request for counsel and certainly not a request for immediate representation." We agree the request was conditional, but, as stated in Part IIA, we do not agree that the police may disregard

the request when they know the condition has been satisfied.

**9.** The Magistrate cited *United States v. Davis*, 527 F.2d 1110 (9th Cir.1975), in which a suspect who indicated he did not want to talk, was shown surveillance photographs taken at the bank during the robbery and asked if he wanted to reconsider. The case is distinguishable. In *Davis,* the suspect's right to silence rather than the right to counsel was at issue, and "the right to silence is not protected by a *per se* rule." *Christopher v. Florida*, 824 F.2d at 844; *Michigan v. Mosley*, 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313 (1975). In any event, the single statement in *Davis* is in sharp contrast with the repeated recitation of incriminating circumstances to which Smith was exposed.

A possibly more analogous case is *United States v. Pheaster*, 544 F.2d 353 (9th Cir.1976), where we held that the police officers did not have to "sit mute" during the transportation of a prisoner even after he had invoked his right to counsel. Our holding in *Pheaster* is seriously

tic rule applies to the initiation of any "communication, exchanges, or conversations." 451 U.S. at 485, 101 S.Ct. at 1885, *see also Bradshaw*, 462 U.S. at 1044–45, 103 S.Ct. at 2834–35. The police "may not ask questions or make statements which 'open up a more generalized discussion relating directly or indirectly to the investigation,' as this constitutes interrogation." *Christopher v. Florida*, 824 F.2d 836, 845 (11th Cir.1987) (quoting *Bradshaw*, 462 U.S. at 1045, 103 S.Ct. at 2835).

The State argues that Smith's post-request "failure to respond to the [troopers'] offer to use the telephone together with the fact that he resumed answering questions adequately clarified Smith's position." Acceptance of this argument would defeat the requirement that post-request interrogation be limited to clarification of the initial request, and that waiver may not be based upon a suspect's response to continued interrogation. *See also United States v. Ledezma–Hernandez*, 729 F.2d 310, 312 (5th Cir.1984).

Because this requirement was violated, the statement obtained from Smith should have been suppressed.

REVERSED.

O'SCANNLAIN, Circuit Judge, dissenting:

As I read the record in this case, defendant Smith never invoked his right to counsel after having been given unrestricted opportunity to do so. At most he was "thinking out loud" while making up his mind in a clearly non-coercive situation. In the *Miranda–Edwards–Fouche I–Fouche–II* context, I would summarize the record as comprising an initial *Mi-*

*randa* waiver as the interrogation begins, a later ambiguous request for counsel[1] followed by clarifying questions, after which it becomes clear that defendant never did invoke his right to counsel. Therefore, I must dissent from the majority's decision to require suppression of the confession. I would concur in the four preceding court decisions (two Alaska state courts, a federal magistrate, and a federal district judge), which found no constitutional bar to the admissibility of Smith's confession.

The key issue is, of course, whether Smith's statements were sufficient, as a matter of constitutional law, to invoke his right to counsel. If Smith had stopped after "Can I talk to a lawyer?," he would have invoked unambiguously his fifth and fourteenth amendment rights and no doubt the Alaska troopers, following *Miranda* and *Edwards*, would have answered affirmatively and shown him the telephone as indeed they did in this case. In any event, "can I talk to a lawyer?" standing alone, would have been an unambiguous request for counsel.

The problem is that Smith did *not* stop there. He went on to say, without interruption, that he was only interested in talking to a lawyer if the police were looking at him as a suspect, whereupon he asked the question, "Are you looking at me as a suspect?" Although the majority feels otherwise, I find the trooper's answer to that question to be responsive and comprehensible: "Well, it ... it wouldn't be fair to you to say that we weren't Mike." Of course Smith was a murder suspect and Trooper Stearns told him so.

The troopers then began to *clarify* whether Smith, having received confirmation he was indeed a suspect, wanted to go

---

undermined by the Supreme Court's decision in *Edwards*. *See also Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (finding a violation of the right to counsel when police elicited incriminating information during ride to police station).

1. Smith's statements evince no more than an ambiguous or equivocal assertion of the right to counsel, *see United States v. Fouche*, 776 F.2d 1398 (9th Cir.1985) ("*Fouche I*"), even when read in light of the Supreme Court's charge to construe broadly any such requests. *See, e.g.,*

*Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986).

Moreover, the simple fact that the suspect has mentioned the word "lawyer" is not dispositive of whether he has made even an ambiguous request for counsel. *See United States v. Jardina*, 747 F.2d 945, 949 (5th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 833 (1985) ("The word 'attorney' has no talismanic qualities. A defendant does not invoke his right to counsel any time the word falls from his lips").

on to invoke his right to counsel, as the following excerpt from the interrogation transcript makes clear.

> STEARNS: And you signed [the rights sheet] and you're aware ... and you're aware that it says on there any time you feel that you want counsel, that's it, okay. So, don't misunderstand Chuck and I. You want counsel, well ... by God don't ... don't hesitate to get yourself counsel. You want to talk to us about Ron Cole's dealings, you want to talk to us about the murder and suspects, anybody, will [sic] talk to you. If you want a lawyer to do that, then feel free [gesturing to a nearby telephone].

These police statements were well within the clarification process because they were in response to Smith's own questions.[2] The majority attaches great significance to the troopers' explaining to Smith *why* he was a suspect, which it deems impermissible because it found a purpose to elicit incriminating statements in violation of the standard we established in *Fouche I*, 776 F.2d at 1405 ("Questions aimed at clarifying the desire for counsel must be strictly limited to that purpose; they may not be used to elicit incriminating information").[3]

While the *Fouche I* standard is strict by its very terms, I do not believe it was intended to be used as a mechanism to pick apart every word that a police officer might utter during the course of an interrogation. Indeed, the actions of the troopers are at least as solicitous concerning the suspect's right to counsel, if not more so, as those of the FBI agent which we held to be proper in *Fouche II*. See also *United States v. Nordling*, 804 F.2d 1466, 1470–71 (9th Cir. 1986). Even the majority concedes that the interrogation was conducted without the slightest trace of coercion.[4] Majority opinion at 1531.

In the clarification process, it became obvious that Smith did not intend to invoke his right to an attorney. Having been offered the telephone to call his lawyer, Smith chose instead to renew the dialogue. Indeed, Smith stated shortly before his confession, and long after having been told he was a suspect: "I don't know if I need [an attorney] or not. That's why I'm trying to make my mind up, if I need to go that route for myself, you know."

Certainly, if Smith's initial statements had been unequivocal, then I would not look beyond them in determining that he

---

**2.** These statements also shed light on what we have referred to as the "critical factor" in determining the validity of the government's behavior; *i.e.,* "whether a review of the whole event discloses that the interviewing agent has impinged on the exercise of the suspect's continuing option to cut off the interview." *United States v. Fouche*, 833 F.2d 1284, 1287 (9th Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988) ("*Fouche II*") (quoting *Nash v. Estelle*, 597 F.2d 513, 518 (5th Cir.) (en banc), *cert. denied.* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979)).

The majority seems to think that the clarification process should be limited to the police *answering* a suspect's questions. See majority opinion at 1533–1534. Such an approach is at odds, however, with the very wording of the standard we adopted in *Fouche I*, wherein we stated that "*[q]uestions* aimed at clarifying the desire for counsel must be strictly limited to that purpose." *Fouche I.* I found no constitutional requirement that a suspect and police reverse roles at this stage; the police are still in charge of the interrogation and are not barred from *asking* clarifying questions.

**3.** Indeed, the troopers' actions neither violate the *Fouche I* standard nor would they violate the necessarily stricter standard we apply in review-

ing police conduct following a suspect's *unequivocal* request for counsel. A recent case is illustrative, in which we held that police did not violate *Miranda* when, after a suspect had unequivocally requested an attorney, they falsely told him that he had been positively identified by the victim of the rape. *Shedelbower v. Estelle*, 859 F.2d 727 (9th Cir.1988). One would be hard-pressed to argue that lying to a suspect about his implication in the crime about which he is being questioned is somehow more appropriate police conduct than that in which the troopers engaged here.

**4.** I am mindful of the Court's admonition that *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and its progeny provide for "a prophylactic safeguard *whose application* does not turn on whether coercion in fact was employed." *Smith v. Illinois*, 469 U.S. 91, 99 n. 8, 105 S.Ct. 490, 495 n. 8, 83 L.Ed.2d 488 (1984) (emphasis supplied). I am not questioning in this dissent *whether Edwards* should be applied; rather, I suggest that evaluating the underlying purposes of the *Edwards* rule offers guidance on *how* to apply the rule.

had properly invoked his right to counsel. *Smith v. Illinois,* 469 U.S. at 92, 105 S.Ct. at 491. But Smith's initial statements do not rise to the level of an unambiguous request, and therefore the *Smith v. Illinois* rule does not apply. *See Grooms v. Keeney,* 826 F.2d 883, 887 (9th Cir.1987) (court stating that "[t]he *Smith* rule does not apply here, because it concerned an unequivocal request for counsel, and there is no persuasive reason to extend or invert its rule to fit the facts of this case") (citation omitted).

Smith's latter statements merely show that he had no intention of unambiguously invoking his right to counsel before continuing to answer questions. In *Fouche II,* we did not require in the clarification process that the suspect affirmatively state that he would continue without a lawyer present. Rather, simply enough, we evaluated whether Fouche invoked his right to counsel. *See Fouche II,* 833 F.2d at 1287 ("Fouche voluntarily declined to invoke his right to counsel, choosing instead to answer [the agent's] questions").

Nothing in *Edwards* or its progeny mandates a reversal in this case. Smith made an ambiguous inquiry about right to counsel, to which the troopers responded properly by seeking to clarify Smith's true intentions. In so doing, the troopers did not stray from the limits we laid down in *Fouche I.* I am aware of no Supreme Court or Ninth Circuit precedent which freezes police in their tracks after the defendant says "I'm trying to make my mind up" in this context. I am concerned that the majority's analysis unnecessarily complicates this area of the law. I fear that the majority's holding does not accomplish what in large measure it sets out to do, *i.e.,* provide a bright line for all concerned parties to follow. In fact, I think it may likely have the opposite effect. The analysis essentially injects a new concept into the fifth-fourteenth amendment lexicon: "conditional unequivocal request for counsel." In so doing, it confuses and diverts attention from whether right to counsel has been invoked. It also carries with it a potentially thorny new analytical requirement, *i.e.,* whether a "condition" laid down by the suspect is satisfied.[5]

Even if my fears that the majority's "bright line" will become blurred are un-

---

**5.** This is especially bothersome here, where the alleged condition relates to a matter within the *exclusive knowledge of the interrogators.* Where, as here, the answer is obvious, *i.e.,* the troopers were looking at Smith as a murder suspect (and so informed him), the problems are admittedly minimal. But what about a situation in which the suspect makes his request contingent upon a matter that is not readily apparent? Then will the focus of the inquiry have to shift to the state of mind of the interrogators to see if the alleged condition is satisfied?

*Until now, right to counsel jurisprudence recognized two categories of request with a bright line rule to deal with each:* "unequivocal" (all interrogation ceases until accused initiates further communication: *Miranda–Edwards* ) or "ambiguous-equivocal" (clarifying questions only: *Fouche I–Fouche II* ). The majority sets up a new category of "conditional" somewhere between *Miranda* and *Fouche I;* I would place "conditional," if such a category were to exist at all, entirely within "ambiguous-equivocal."

First, a two category rule definitely offers a much more luminous "bright line" than does the majority. Second, such a standard actually serves to protect the suspect undergoing questioning better than does the majority approach because under the latter analysis, what happens to requests based on conditions that are not satisfied? Can they be treated as nullities? Again, the analysis will unravel into a thorny bramble in which the court will be called upon to determine whether the condition is satisfied. Third, the "strictly limited" standard set forth in our *Fouche I* decision guards against agents using responses to an allegedly conditional request for counsel as opportunities to obtain incriminating statements. Indeed, under the standard of conduct exhibited in this case, the interrogator would be required to do more than simply provide any knowledge he may have in regard to the "condition" the suspect has attached to his purported invocation; he should also give the suspect, having been made aware of any information the agent may have had, an additional and explicit opportunity to invoke the right to counsel (as the troopers did here). Finally, such a standard comports with the fact that "*Edwards* focuses on the state of mind of the suspect and not of the police." *Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 2093, 2101, 100 L.Ed.2d 704 (1988). Indeed, as Justice Kennedy stated in his *Roberson* dissent, "[o]ur ultimate concern in *Edwards,* and in the cases which follow it, is whether the suspect knows and understands his rights and is willing to waive them." *Roberson,* 108 S.Ct. at 2102.

justified, I am concerned that it loses sight of the policy underlying that line. Until now, we have sought to maintain a delicate balance [6] between ensuring that suspects are properly insulated against police over-reaching while allowing the law enforcement community to perform its duties effectively.[7]

Perhaps the majority's new "bright line" is only an accretion from the old. But one only has to look back less than a decade to the facts of *Edwards* (which extended *Miranda*) and compare them to the present case to see how accretion becomes avulsion. The *Edwards* Court was presented with detectives who went to the jail where defendant was being held to badger him into talking after he had unequivocally invoked both his right to counsel and his right to remain silent; the Court quite properly drew a line beyond which the police could not go and required suppression of the confession. Here, we delegate to a knowledgeable defendant during a *Miranda*-waived interrogation at trooper headquarters the right to lay down to police the conditions upon which his interrogation may or may not proceed. We have come a long way since *Miranda* and *Edwards*—too far, too fast, in my view.

---

**6.** I advisedly speak of maintaining a balance between these competing interests in this context. As Justice Kennedy reminds us in his dissent in *Roberson,* the *Edwards* rule is just that—a rule—and not a constitutional mandate. *Roberson,* 108 S.Ct. at 2101–02 (Kennedy, J., dissenting). Therefore, we must be careful in applying the rule in contexts that represent an "inching away" from the moorings of the original purposes for the rule.

**7.** The words of Justice Kennedy's dissent in *Roberson* seem particularly apt here as well: "The majority's rule is not necessary to protect the rights of suspects, and it will in many instances deprive our nationwide law enforcement network of a legitimate investigative technique now routinely used to resolve major crimes." *Roberson,* 108 S.Ct. at 2102 (Kennedy, J., dissenting).